**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **C.B. AS THE PARENT AND NATURAL GUARDIAN OF S.B., A MINOR,** | : |
| | : |
| | : |
| **Plaintiffs,** | : |
| | : CIVIL ACTION NO. |
| **v.** | : |
| | : |
| **PENNSYLVANIA DEPARTMENT OF HUMAN SERVICES** | : |
| | : |
| **AND** | : |
| | : |
| **DELAWARE COUNTY** | : **JURY TRIAL DEMANDED** |
| | : |
| **AND** | : |
| | : |
| **DELAWARE COUNTY JUVENILE DETENTION CENTER** | : |
| | : |
| **AND** | : |
| | : |
| **CHILD GUIDANCE RESOURCE CENTER** | : |
| | : |
| **AND** | : |
| | : |
| **JOHN DOES 1-100** | : |
| | : |
| **AND** | : |
| | : |
| **ABC ENTITIES 1-10** | : |
| | : |
| **Defendants.** | : |

## COMPLAINT – CIVIL ACTION

Plaintiff, C.B., as the Parent and Natural Guardian of S.B., a minor, by and through her

attorneys, VSCP LAW, by way of a Complaint against Defendants, Pennsylvania Department

of Human Services, Delaware County, Delaware County Juvenile Detention Center, Child

Guidance Resource Center, John Does 1-100, and ABC Entities 1-10, avers as follows:

### Introduction

1.     Pennsylvania has a long and disturbing history of child abuse and sexual assault at its juvenile disciplinary institutions. [1]

2.     After abuse comes to light at either private or governmental juvenile facilities, the pattern is always the same: task forces are formed, reports are authored and statements are made that such atrocities must never be allowed to occur.  Yet despite these promises, abuses continue to occur at Pennsylvania's juvenile disciplinary institutions that have been established to care for, protect and rehabilitate our children.  Worse yet is the well-known fact that reported abuse represents only a fraction of the actual abuses that occur as many incidents go unreported, even in cases where the abuse is known and/or suspected to have occurred.[2]

3.     The purpose of juvenile disciplinary institutions is not to punish, but to provide children with the appropriate care, supervision, and rehabilitation. Under Pennsylvania's Juvenile Act, disciplinary facilities such as the Delaware County Juvenile Detention Center are obligated "[t]o provide for care, protection, safety and wholesome mental physicaldevelopment of children."[3] Unfortunately, for the boys and girls who were committed to the Delaware County Juvenile Detention Center, nothing could have been further from the truth.

4.     Under the authority of Director Mark A. Murray (hereinafter "Murray"), children at Delaware County Juvenile Detention Center were physically, mentally, and/or sexually abused

---

[1] *See* Lisa Pilnik, Robert G. Schwartz, Karen Lindell, Jessica Feierman and Christina Sorenson, *Transforming Justice – Bringing Pennsylvania's Young People Safely Home from Juvenile Justice Placements,* Juvenile Law Center, (2019), https://jlc.org/sites/default/files/attachments/2019-10/Transforming_Justice_final.pdf; *see also* Philadelphia Inquirer , Nov. 2019, *Pa. governor's council recommends sweeping changes to juvenile justice programs,* https://www.inquirer.com/news/pa-governor-wolf-glen-mills-abuse-overhaul-dhs-recommendations-20191101.html; and the "Kids for Cash" Juvenile Scandal, https://www.cnn.com/2009/CRIME/02/23/pennsylvania.corrupt.judges/.

[2] *See* Clifton Adcock, *Most Juvenile Facilities Don't Comply with U.S. Rape Prevention Standards*, OKLA. WATCH (Feb. 25, 2016), http://oklahomawatch. org/2016/02/25/most-juvenile-facilities-dont-comply-with-u-s-rape- prevention-law. *See also* Joaquin Sapien, *Report Cities Failure to Act Against Abusers of Juveniles in Detention*, PROPUBLICA(Feb. 3, 2016), https://www.propublica.org/article/report-citesfailure-to-act-against-abusers-of-juveniles-in- detention

[3] 42 Pa.C.S. §6301(b)(1.1)

and neglected by staff and peers. Perhaps worse than the abuse itself was the culture, one not simply of tolerance *of* abuse, but enthusiasm *for* abuse. This culture was enabled and advanced by Murray and his staff, evidenced by their continued failure to report and/or prevent suspected, reasonably knowable, and/or known child abuse and neglect.

5.      The matter before this Court is also about Defendants, Delaware County, Delaware County Juvenile Detention Center and the Department of Human Services' failure to protect S.B. and other children from severe and pervasive abuse that was rampant for years, perpetrated by staff, and the blatant refusal of their employees to report known and/or suspected child abuse that was being and/or had been committed upon children at Delaware County Juvenile Detention Center, of which they knew or should have known, as well as the unconscionable and outrageous conduct of Delaware County, Delaware County Juvenile Detention Center and Department of Human Services in allowing Delaware County Juvenile Detention Center to exist as it did, to retain staff who not only abused and neglected children, but also threatened and intimidated minors to stay silent, after knowing of multiple instances of abuse and intimidation involving multiple staff members of Delaware County Juvenile Detention Center, thereby exposing children, including S.B., again and again to known danger.

6.      This matter is also about the cover up of abuse perpetrated by Delaware County Juvenile Detention Center and its staff along with Defendant, Child Guidance Resource Center, in choosing to protect their own reputation and bottom line at the expense of the safety and well-being of children in need and in their care, custody, and/or control. The full extent of their efforts in fostering a culture of secrecy that allowed such pervasive abuse of children and the effects of same may likely never be fully known.

### ***The Parties***

7.      Plaintiff, C.B., is the parent and natural guardian of S.B., a minor female.  Their full names and address are not contained in this Complaint so as to protect their privacy and identity as S.B., (hereinafter also known as "Minor-Plaintiff"), incurred injuries and damages of a sensitive

nature as a result of the intentional and negligent acts and failures of Defendants outlined below. Information which would or could identify C.B. or S.B. is not contained herein. Plaintiffs may be contacted through counsel as outlined herein. C.B. and S.B. are citizens of the Commonwealth of Pennsylvania.

8.      Defendant, Delaware County, ("DC"), is a local government unit and/or agency of the Commonwealth of Pennsylvania with business offices located at 201 West Front Street, Media, Pennsylvania 19063.  DC is a "person" as the term is used in 42 U.S.C. § 1983.

9.      Defendant, Delaware County Juvenile Detention Center, ("DCJDC"), is a youth detention center owned, controlled, and operated by Defendant, Delaware County, Pennsylvania. Specifically, DCJDC is an activity of Delaware County, which is a political subdivision of the Commonwealth of Pennsylvania and body politic and lies within this district. The DCJDC is a division of the Court Services Department of Delaware County, governed by the Board of Judges, under the direction of President Judge Kevin F. Kelly. DCJDC is located at 370 Middletown Road, Lima, PA, 19037.

10.      Defendant, Department of Human Services (hereinafter "DHS"), is the Commonwealth Agency responsible for licensing, supervising and regulating juvenile detention facilities in the state, including DCJDC.

11.      ABC entities 1-10 are current and/or former public agencies or private entities who were responsible to ensure the safety and protection of children at DCJDC, and, more specifically, to prevent the abuses described more fully herein from occurring.

12.      Defendants DHS, DC, DCJDC and ABC Entities 1-10 violated the clearly established federal Constitutional and statutory rights of Plaintiffs under the Fourth, Eighth and Fourteenth Amendments subjecting Minor-Plaintiff to harmful and degrading physical and mental abuse and neglect, including, but not limited to, the use of excessive and unreasonable physical force, mental torture and neglect and by failing to protect her from harm and injuries at the hands of others.

13.     Defendants DC, DCJDC, DHS and ABC Entities 1-10 caused the injuries and harms to Minor-Plaintiff by failing to train, supervise and discipline the staff at DCJDC, including, but not limited to, the John Doe Defendants and, as a result, staff at DCJDC, including the John Doe Defendants, as a matter of practice and custom, engaged in the prohibited conduct on a systematic basis with the expectation that their conduct would not be subject to discipline or sanctions.

14.     Defendants DC, DHS, DCJDC and ABC Entities 1-10 failed to properly protect Minor-Plaintiff and have shown a reckless disregard and deliberate indifference to the widespread violation of Minor-Plaintiff's constitutional rights despite knowing for decades of the conduct of the John Doe Defendants, including physical, sexual and mental abuse and neglect, and the corresponding lack of protection for Minor-Plaintiff and the children residing at DCJDC.

15.     Defendant, Child Guidance Resource Center (CGRC), is a non-profit organization in Pennsylvania with its headquarters located at 200 Old West Chester Pike, Havertown, Pennsylvania, 19083. At all relevant times hereto, Defendant CGRC provided counseling and other services to children at DCJDC. CGRC and its employees were mandated to report known or suspected child abuse under Pennsylvania law.

16.     On March 12, 2021, DCJDC was ordered closed by President Judge Kevin F. Kelly as a result of reports of extensive child abuse taking place there, including, but not limited to, abuse described herein.

17.     John Does 1-100 are current and former managers, supervisors, administrators, officials, staff, counselors and others who have been employed by or were under the control of the Defendants, who abused or facilitated the abuse of children at DCJDC.

18.     Because of Defendants' conduct, Minor-Plaintiff suffered and will continue to suffer from physical bodily injuries, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life. Minor-Plaintiff has and will in the future sustain loss of earnings and earning capacity and has, and will, incur expenses for medical and psychological treatment, therapy and counseling. Defendants are

liable for same as described more fully below.

19.     At all relevant times hereto, Defendants were acting directly as well as by and through their duly authorized actual and/or apparent agents, servants and employees, in particular, their staff, officers, guards, medical clinicians, clinical case workers, supervisors and directors acting within the course and scope of their actual and/or apparent agency and/or employment.

20.     Defendants herein are directly and vicariously liable to Plaintiffs for injuries sustained as a result of negligence, gross negligence, outrageous conduct, and reckless misconduct, as described further herein, as well as a violation of Minor-Plaintiff's constitutional rights as described further herein, of persons or entities whose conduct was under their control, or right to control which conduct directly and proximately caused all of Minor-Plaintiff's injuries.

## *Jurisdiction and Venue*

21.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 1983. At all relevant times, Defendants DHS, DC, DCJDC,ABC Entities 1-10 and John Does 1-100 acted under the color of state law.

22.     This Court also has supplemental jurisdiction over Plaintiffs' state law claims.

23.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the judicial district where this action is brought.

## I.      DCJDC – HISTORY OF ABUSE

24.     The Delaware County Juvenile Detention Center, a division of the Court Services Department of Defendant, Delaware County, is a juvenile detention facility with an obligation to provide a secure setting for young children from the ages ten (10) through eighteen (18) years of age for various reasons.[4]

25.     Recently, the Public Defender's Office of Delaware County initiated and then

---

[4] https://www.delcopa.gov/courts/pdf/jd/Yearly.pdf

conducted a lengthy investigation and review of the DCJDC. Current and former DCJDC residents and staff were interviewed as were various case workers who worked at DCJDC. Chief Public Defender for Delaware County Christopher Welsh, along with First Assistant Public Defender Lee Awbrey, wrote to Teresa D. Miller, Secretary for Defendant, DHS, expressing their "grave concerns about the health, safety and well-being of the children in custody"at DCJDC.[5]

26.     The Delaware County Public Defender's investigative findings are chilling and unconscionable. Just a few examples of their investigation include:

- "… through interviews with our clients and interviews with current and former DCJDC staff, our office has uncovered multiple credible allegations of physical, sexual, mental abuse perpetrated by the DCJDC staff against children held in their custody…"[6]

- "Youth detained at DCJDC are subjected to prolonged isolation as a form of punishment, sometimes for days or weeks…."[7]

- "Children are denied access to mental health supports and have difficulty accessing medical care…."[8]

- "The facilities are dirty, in disrepair, and in some instances, disgusting.  We received reports of inadequate water access on residential units, heat that cuts out during winter, rodents, and bug infestations…." [9]

- In conclusion, Mr. Welsh and Mr. Awbrey stated: "We are deeply concerned for the health, safety and well being of our clients and all

---

[5] *See* March 12, 2021 correspondence from Christopher Welsh and Lee Awbrey of the Office of the Public Defender, County of Delaware to Teresa D. Miller, Secretary of the Department of Human Services, Commonwealth of Pennsylvania, with attachments, attached hereto as Exhibit "A."
[6] Id.
[7] Id.
[8] Id.
[9] Id.

of the children in custody at the DCJDC….”[10]

27.      These facts are especially troubling given that DCJDC promotes itself as a secure custodial facility for its residents and between 2019 and 2020 alone, DCJDC housed a total of 782 children within its facility.[11]

### A. Physical, Sexual, Verbal and Psychological Abuse by DCJDC Staff

28.      Despite DC, DCJDC, DHS and ABC Entities 1-10's duty to provide a safe and secure setting for the children that reside within the facility, its actions have demonstrated anything but safety and security. DC, DCJDC, DHS and ABC Entities 1-10's conduct has perpetuated the continued abuse of children housed at DCJDC. DC, DCJDC, DHS and ABC Entities 1-10's actions and omissions have displayed blatant disregard for the health and safety of the children they serve, demonstrated by the physical, sexual, and psychological abuse and neglect committed by DCJDC staff over decades.

29.      There are numerous accounts of physical and sexual abuse committed by DCJDC's staff followed by DCJDC turning a blind eye to these confirmed acts. Despite the many incidents that occurred under numerous administrators, DC and DCJDC outrageously and unconscionably allowed the abuse to continue and chose not to alert the public of their findings and/or danger associated with entering DCJDC. Nor did DC or DCJDC take any remedial measures whatsoever to prevent future abuse from occurring, nor did DHS take any appropriate action to curtail the abuses either. These obvious affirmative acts and omissions led to thousands of at-risk, vulnerable minors (many from troubled backgrounds and broken homes in need of supervision and rehabilitation) being sent against their will and by court order to DCJDC away from their families and into the throes of an abusive environment.

30.      The numerous accounts of physical, sexual and psychological abuse children

---

[10] Id.

[11] Id.

suffered while in DCJDC's care include, but are not limited to, the following:

a. DCJDC staff slapped a child's head into a metal wire mesh lined window. The force of the DCJDC's staff slapping the child caused the reinforced window to crack;

b. A DCJDC staff member shoved and hit a child resident;

c. A DCJDC supervisor violently shoved a child into a wall as the other staff watched;

d. DCJDC guards, unchecked by supervisors, used extreme amounts of force to restrain children;

e. A DCJDC child resident reported on at least two (2) occasions being placed in a chokehold by DCJDC staff which almost caused him to lose consciousness;

f. A non-resident reported fearing for the life of a child as they watched a DCJDC guard throw the child against a wall in a violent chokehold;

g. Another repulsive incident involved a DCJDC guard grabbing a pregnant child resident by her shoulders and yelling in her face. After the youth fell to the floor, the DCJDC guard proceeded to carelessly "step over her in a menacing posture as she lay[ed] on the ground" and continued to scream at her. It was later reported that this DCJDC guard's intent was to cause the child to miscarry;

h. Another child was victim to a DCJDC guard who repeatedly punched her in the face while another DCJDC guard held her down. Other DCJDC staff just watched as the child was being viciously beaten;

i. Another horrendous incident involved the physical abuse of a child resident who suffered from a severe mental illness attempting to asphyxiate herself by swallowing clothing. After DCJDC staff was able to intervene and remove the clothing, three (3) DCJDC staff members violently forced the child resident's head into a toilet forcing her to drink from it after the child resident asked for water;

j. DCJDC staff also refused to follow suicide protocols as they watched idly as a child had clothing wrapped tightly around her neck causing discoloration in her face and

veins to protrude from her neck;

k. DCJDC staff bragged about the brutal beatings they imposed on the children. A DCJDC staff member was observed gloating about punching a child in the face and stated the staff member "fucked her up."

l. In addition to the heinous physical abuse the children suffered at the hands of DCJDC staff, the children also suffered from incessant and despicable verbal and emotional abuse.

m. There are several reports of the pervasive verbal abuse and threats the children residents suffered while in DCJDC's care. A DCJDC staff member has been observed getting in the face of a child and telling him "I'll see you on the street. I'll beat you up. I'll take care of it."

n. While in the presence of DCJDC's former Lead Clinician, a child resident courageously reported to the DCJDC supervisors the threats he received from an overnight DCJDC staff member. The child informed the supervisor that the DCJDC staff member threatened the child with the statements he was going "fuck you up" and "fuck [his] mom." DCJDC staff have also been heard yelling out "bitch" to the children.

o. The verbal abuse and threats made by the DCJDC staff were often racist, misogynistic or offensive to LGBTQ residents. The children were forced to hear vulgar language used by DCJDC staff including occasions when staff shouted out "Fuck you, pussy!" and "Suck my dick, bitch!" at the children.

q. When attacking the children, DCJDC staff attacked the gender, religious, racial, linguistic, and identity status of the children. These incidents include:

- Placing a Muslim child in solitary confinement for wearing a hijab in a color the DCJDC staff did not like;

- DCJDC staff refused to believe that a Spanish-speaking child could not understand English. Instead of trying to assist the child, DCJDC

staff addressed the language barrier by yelling at the child in English;

- Another incident of obscene use of language included DCJDC staff yelling at a child calling him the N-word.

r. Children of the LGBTQ community have also suffered poor treatment by DCJC staff. DCJDC's staff has degraded, shamed and humiliated the transgender children at the facility.

s. Whenever transgender children were in the care of DCJDC, staff refused to use preferred pronouns, denied a transgender child a wig and did not permit a transgender girl to shave her facial hair.

t. To further perpetuate their disdain for the LGBTQ community, DCJDC staff outed a transgender child, did not continue her hormone treatment, and did not allow her to live on a unit consistent with her gender identity.

u. DCJDC leaders forbid staff from attending training that taught transgender cultural competency which was offered by the state at no cost.

v. The children also suffered sexual abuse which DC and DCJDC ignored. A child reported a male DCJDC staff coming onto her in a sexual manner but was too fearful of retaliation to disclosethe staff member's name. An employee of CGRC recalled a DCJDC staff member, known as "BigRob," playing a song by R. Kelly, who currently stands charged with sexually abusing children, while chasing a child repeating "I'm gonna get you!" Despite this incident being reported to the Childline, "Big Rob" remained employed at the DCJDC.

The averments are above set forth in Exhibit "A".

31.     DC and DCJDC were aware of the abusive patterns used in the facility and have done nothing to stop it.

32.     It is also believed and therefore averred that DHS, CGRC and ABC Entities 1-10 either knew or should have known of the pervasive and severe abuse and neglect being committed

upon children at DCJDC as described above yet did nothing to prevent it from happening.

### B. Excessive, Unjustified, and Prolonged Isolation

33.     Many of the juveniles detained at DCJDC have suffered and/or are suffering from diagnosed mental, emotional, and/or developmental disabilities. The children also came with documented histories of trauma and childhood victimization. The use of solitary confinement will only exacerbate these issues while also perpetuating the continued abuse of children within facilities such as DCJDC.[12]

34.     While Pennsylvania law does permit the use of seclusion under strict supervision, its use is severely limited by statute.[13]

35.     DCJDC's use of solitary confinement was not permitted under Pennsylvania law as juvenile detention facilities cannot isolate children for days at a time, use isolation as a form of punishment, nor may they use isolation as a threat to control a child's behavior.[14]

36.     The child residents at DCJDC have been subjected to unlawful prolonged isolation spanning days at a time. During these times of prolonged isolation, there have also been instances where children were arbitrarily deprived of access to mental health counselors.

37.     One incident involved a child that was forced into solitary confinement for two (2) weeks due to secondary exposure to Covid-19 despite Covid-19 safety precautions not being consistently followed as Delaware County Covid-19 guidelines do not require employees to quarantine after secondary exposure. On another occasion, a child was left in solitary confinement for several months. *See* Exhibit "A".

38.     Another instance involved a child suffering from mental illness covering herself in her own excrement while in solitary confinement. The DCJDC ensured that the child remained

---

[12] *See* Sue Burrell, *Trauma and the Environment of Care in Juvenile Institutions*, THE NATIONAL CHILD TRAUMATIC STRESS NETWORK, (Aug. 2013) at 4, https://www.nctsn.org/sites/default/files/resources/trauma_and_environment_of_care_in_juvenile_institutions.pdf ("[T]he most potentially damaging way youth can be re-traumatized is in the use of … solitary confinement.").
[13] *See* 55 Pa. Code §3800.274(17) (ii)(Under Pennsylvania law, absent an order by a licensed physician, physician assistant or registered nurse, no child shall be subjected to solitary confinement for more than four (4) hours. There must be a re-examination and new order for every additional four (4) hours.)
[14] Id.

locked in solitary confinement for three (3) days without water or the ability to shower. *See* Exhibit "A".

39.     Despite the evidence of its harmful use, DCJDC, under the licensing and supervision of DC and DHS, proceeded with its continued use of solitary confinement.

40.     In fact, Director Murray further encouraged and promoted the use of solitary confinement by his DCJDC staff as a form of punishment against the children.

41.     During a January 7, 2021 hearing, DCJDC Director Murray openly admitted to the use of solitary confinement against the children. Murry testified that the use of solitary confinement was derived from situational events. The "situational" event Murray testified to was in reference to the immediate use of solitary confinement against a child as a form of punishment after the child stated to the guard that she would slap them. The use of solitary confinement against the child was in violation of Pennsylvania regulations.[15]

42.     From this encounter, DCJDC went through great lengths to obtain a court order to extend the child's solitary confinement from an already long four (4) to eight (8) hour confinement to a full forty-eight (48) hours.

43.     It is believed and therefore averred that all Defendants, DC, DCJDC, DHS and CGRC, were aware of the improper use of solitary confinement of children at DCJDC and refused to report or stop the improper practice despite it being clear child abuse.

### C. Unacceptable Medical Care, Mental Health Care, Education and Facilities

44.     It was and is the duty of DC, DCJDC, DHS and ABC Entities 1-10, to provide the necessary mental health care, medical care, adequate education and facilities to the youth that are under its care.

45.     Often, children at DCJDC were denied access to mental health support and/or have difficulty accessing medical care.

---

[15] *See* 55 Ps. Code § 3800.202; *see also* 55 Pa. Code §§ 3800.212 (c)(3), 3800.274(17)(ii).

46.     Knowing the need to have such access to mental health supporters, DCJDC developed deceptive means to prevent children from having access to counselors.

47.     A DCJDC employee described that "[s]ome DCJDC staff who placed these children on unit restriction deliberately withhold mental health services during the unit restriction period. To access these children and provide necessary treatment, I had to learn which DCJDC staff members were most likely to give me permission." *See* Exhibit "A".

48.     Children were also arbitrarily denied access to mental health counselors. Oftentimes, the denial of access to mental health counselors was retaliatory.

49.     Additionally, children's healthcare was often ignored and disregarded. A child suffering from discomfort was turned away because the medical staff refused to believe her symptoms. It was subsequently determined that the child was suffering from a sexually transmitted disease. This neglect resulted in a two (2) week delay in providing the child necessary treatment. *See* Exhibit "A".

50.     DC and DCJDC had no interest in furthering the education of the children evidenced by its poor curriculum. The education provided to children was "one size fits all" in which children would receive only two (2) hours of schooling and worksheets that were not tailored to their education level. *See* Exhibit "A".

51.     In addition to the poor education, the children suffered from severely poor living conditions.

52.     The facility was in deplorable condition as it was covered in filth and disgust. Parts of the facility were often covered in mouse droppings and infested with bugs. Some rooms were left unclean for weeks or months at a time. *See* Exhibit "A".

53.     Children at DCJDC suffered through numerous winters without heat, some occasions lasting as long as a week. When CGRC staff questioned DCJDC regarding the heat, DCJDC stated there was nothing that could be done. A Childline complaint was filed about the freezing temperatures and the heat was restored later that day. *See* Exhibit "A".

54.     There were instances when it was so cold in the DCJDC facility that children reported seeing their breath. During these winter months DCJDC staff were protected with coats, hats and scarves while the children suffered as they were not given any winter clothing. *See* Exhibit "A".

55.     Under the National Food Program, the child residents are eligible to receive free breakfast and lunch. Despite this eligibility, the food was inadequate as it was often inedible and as a result the children were often left hungry. DCJDC staff also refuse to accommodate children who are vegetarian.[16]

56.     The DCJDC kitchen staff also failed to comply with sanitary guidelines.

### D.  DCJDC's Culture of Secrecy

57.     The culture of DCJDC has fostered an environment of secrecy by instilling fear and creating the ever present threat of retaliation by the DCJDC staff if children were to disclose the abuse they suffered.

58.     Children would often beg the Mental Health Clinician to refrain from reporting abuse to authorities as they feared the disclosure would only result in relation from the DCJDC staff and make matters worse for them.  *See* Exhibit "A".

59.     Despite there being video cameras on the premises, DCJDC staff were well aware of the blind spots where there was no camera coverage. It is in these areas where the previously outlined instances of physical abuse largely occurred. It was also in these areas where children were most vulnerable and put in danger. *See* Exhibit "A".

60.     The deliberate, strategic, and premeditated actions of the DCJDC staff to ensure that their abusive actions would not be recorded on camera truly exemplifies the scope and scale of the abuses occurring within this facility (and other juvenile detention centers alike).

61.     In addition to purposely hiding their abusive acts, DCJDC staff have also altered reports to try and corroborate their false accounts when an incident involving force was reported.

---

[16] *See* https://www.delcopa.gov/courts/juveniledetention.html

62.     To further ensure the secret and abusive culture, children have been deterred from telling the truth by being told no one would believe them.  *See* Exhibit "A".

63.     In the above-mentioned incident where a child courageously reported a threat by an overnight DCJDC staff member to the DCJDC supervisor, the supervisor responded, "Do you really think a judge is going to believe a bunch of juvenile delinquents over a corrections officer?" *See* Exhibit "A".

64.     When Childline reports were made, some DCJDC staff asked for a "heads up" before the report is made.  *See* Exhibit "A".

65.     DCJDC staff would retaliate against those who made Childline reports by giving them the silent treatment, denying them access to children for mental health services, and responding with other spiteful behaviors.  *See* Exhibit "A".

66.     DCJDC leadership encouraged the secrecy of the horrid physical, sexual, and psychological abuse the children suffered by coaching certain children on how to interact with investigators. DCJDC leaders would bribe children with candy to skew the investigation to further hide the abuse the children suffered.  *See* Exhibit "A".

67.     Despite the presence of cameras within the facility to capture the abuse the children suffered, these videos were often hidden from investigators and on other instances flat out ignored. *See* Exhibit "A".

68.     DC and DCJDC was aware of the conduct of staff and other employees to hide the physicalabuse the children suffered. DCJDC encouraged the concealment of the abuse the children sufferedand has done nothing to end the secrecy culture or protect the children.

### E.  CGRC's Role in the Abuse at DCJDC

69.     CGRG is a nonprofit organization and the largest provider of children's mental health services in the greater Philadelphia region.[17]

70.     Among its various services, CGRC also employs mental health staff that provide

---

[17] *See* https://www.cgrc.org/

mental health services to juvenile detention centers such as DCJDC.

71.     The CGRC provided services at the DCJDC through its contract with Defendant, Delaware County.

72.     As clinical professionals, CGRC staff had a duty to report abuse children suffered at the hands of DCJDC and its staff but instead was instructed to turn a blind eye and in fact did so.

73.     The CGRC encouraged the abuse the children suffered by instructing the CGRC staff to give DCJDC staff "a heads up" when filing a Childline complaint which allowed DCJDC staff time to prepare an explanation and fabricate their accounts. *See* Exhibit "A".

74.     Despite CGRC's alleged support of the closing of DCJDC and the investigation now underway, CGRC did nothing to stop the abuse the children suffered. Instead CGRC's affirmative actions and omission furthered the abuse and DCJDC's attempts to keep it hidden.[18]

75.     Due to pressure by CGRC leadership, CGRC psychiatrists fabricated reports that were used in court to ensure Delaware County Juvenile Probation's desired results. CGRC staff was repeatedly told not to "rock the boat" and were warned against working with the Public Defender's Office regarding the abuse of the children.

76.     CGRC, its leadership, and its staff were more concerned with their own bottom line and reputation instead of the health and safety of the children as CGRC staff was encouraged to refrain from exposing the abuse that occurred to prevent antagonizing the Delaware County Juvenile Probation as that would cost CRGC its "lucrative contract" with Defendant, Delaware County.

77.     CGRC was aware of the abuse that occurred and had a duty to report abuse  but chose not to do so in many instances.

## II.     S.B., A Minor, Suffered Horrible Abuse at DCJDC

78.     S.B. was a resident at the Delaware County Juvenile Center on four (4) separate occasions between June 2020 and February 2021.  S.B.was only sixteen (16) years old when she

---

[18] *See* Liia Richmond, *Statement Regarding Lima Detention Center*, (Mar. 14, 2021), https://cgrc.org/blog/statement-re-lima-detention-center/

was a resident of DCJDC and the abuses identified herein occurred.

### A.       Physical Abuse

79.     S.B. was physically abused throughout all of her stays at DCJDC.

80.     On one occasion, S.B. was held down and punched in the face.  She sustained a black eye and bruised lip.  She was then locked in her room for 24 hours with no medical attention.

81.     On another occasion, S.B. was punched in her side by a DCJDC guard.  She complained of pain and was eventually taken to the hospital where she was diagnosed with a urinary tract infection.

82.     In another instance, the same DCJDC guard stepped hard on S.B.'s ankle causing her severe pain and problems walking for some time.

83.     On one occasion when S.B. was having an asthma attack, the DCJDC guards took her inhaler causing her to gasp for breath.

84.     S.B. was often restrained unnecessarily and forcibly.  The guards would restrain her by tightly securing her arms behind her back.

85.     S.B.'s face was often pushed into walls for no reason at all.

86.     On one occasion, a DCJDC guard chased her around a table and continued to do so despite S.B. asking him to stop.  This was very frightening for S.B. as it appeared he was making sexual advances.

### B.       Psychological Abuse

87.     Due to the ongoing physical abuse and S.B.'s underlying medical conditions, S.B. required medical attention and mental health treatment but it was not provided to her.

88.     On one occasion, S.B. tried flooding her room to obtain the medical attention she desperately needed but it was not provided to her.  Instead, the guards simply turned off the water to her room.

89.     On another occasion, S.B. was felt to be a suicide risk but instead of having her seen by medical professionals, the DJCDC staff took her clothes and left her naked and locked in her

room for two days.

90.     S.B., only a sixteen year old girl, was also told by DJCDC staff that "she might as well drop out of school because she will end up as a crack head".

91.     S.B. was also repeatedly called a whore by DJCDC staff.

92.     S.B. was also subjected to stories by the DJCDC staff of their sex lives and sexual experiences.

93.     S.B. was also constantly screamed and yelled at which only further psychologically and mentally damaged her.

### C.      *Abusive Living Conditions*

94.     The living conditions at DJCDC were atrocious.  S.B. was forced to live in squalor, including, but not limited to, the following:

      a.      There was no heat in the winter and no coats or warm weather gear was provided.  S.B. only had one blanket.

      b.      Roaches and insects were everywhere.

      c.      Mice were a constant presence in S.B.'s room and the entire facility.

      d.      The food was inedible and/or sometimes no food was provided.

### D.      DC, *DJCDC, DHS and CGRC DID NOTHING*

95.     S.B. would complain to staff, but nothing was ever done and the abuse continued.

96.     When S.B. was allowed in the infirmary, she would call her Mom, C.B., who would call Delaware County representatives to complain but nothing was done and the abuse continued.

97.     The abuse of minors, including S.B., taking place at DCJDC was known to Defendants DC, DCJDC, DHS and CGRC.

98.     As a direct and proximate result of the physical, verbal and psychological abuse and

neglect committed by all Defendants, S.B. suffered physical and emotional injuries, as more fully set forth in this Complaint. As a result of the abuse at DCJDC, S.B. has been severely mentally, psychologically, and emotionally damaged.

99.     S.B. has suffered and continues to suffer great pain and suffering as a result of the abuse she suffered while a resident of DCJDC, including, but not limited to, physical pain, emotional distress, physical manifestations of emotional distress including stomach pains, headaches, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life. The significant physical, emotional and psychological injuries sustained by S.B. are real, significant and ongoing.

100.    S.B. continues to suffer from stress and anxiety as a result of her time at DCJDC.

101.    All of the above physical, psychological, and emotional injuries were proximately caused by the negligence, carelessness, recklessness, deliberate indifference, constitutional rights violations and other tortious and outrageous acts or omissions of Defendants as set forth in this Complaint.

### *State Law Claims*

### COUNT I -NEGLIGENCE
### Plaintiffs v. Defendants CRGC, John Does 1-100 and ABC Entities 1-10

102.    Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint as if fully set forth herein:

103.    At all relevant times, Defendants CGRC, John Does 1-100 and/or ABC Entities 1-10, owed a duty to ensure that minors were not being physically, verbally and/or psychologically abused by staff at DCJDC and a duty to report any known or suspected child abuse.

104.    At all relevant times, Defendants CGRC, John Does 1-100 and/or ABC Entities 1-10 owed a duty not to help cover up child abuse at DCJDC.

105.    At all relevant times, Defendants CGRC, John Does 1-100 and/or ABC Entities 1-10 owed a duty to protect and safeguard Minor-Plaintiff from hurt, harm and danger while she was under their care and supervision at DCJDC.

106.    At all relevant times, Defendants had a duty to ensure that the abuse being committed by DCJDC employees was reported.

107.    At all relevant times, Defendants had a duty to provide for the safety of Minor-Plaintiff when it knew, or should have known, that she was subjected to continuous and regular abuse.

108.    At all relevant times, Defendants knew or should have known that agents, employees, servants and/or staff members of DCJDC were physically, verbally and psychologically abusing Minor-Plaintiff as well as other minors at DCJDC and/or posed a risk to Minor-Plaintiff.

109.    Defendants knew, had reason to know, or were otherwise on notice of the unlawful conduct of DCJDC and its own staff who failed to protect the safety of children in DCJDC, including Minor-Plaintiff. Defendants failed and further prevented its staff in taking reasonable steps to implement reasonable safeguards to prevent acts of unlawful abuse by the staff at DCJDC. Defendants, CGRC, John Does 1-100 and/or ABC Entities 1-10 failed to prevent or avoid placement of Minor-Plaintiff in functions or environments in which she would be endangered and abused.

110.    By failing to act and remain silent given the known, or reasonably knowable, activities of DCJDC staff, Defendants allowed for physical violence, mental torment, and the violation of the sanctity of children, including Minor-Plaintiff, to be condoned, approved, and effectively authorized.

111.    Defendants CGRC, John Does 1-100 and/or ABC Entities 1-10 allowed, condoned and authorized the abuse of minors by telling its staff members not to report the abuse happening at DCJDC. Defendants further aided in the cover up of the abuse of minors occurring at the detention center so that it may keep its "lucrative contract" with Defendant, Delaware County.

112.    Through their failure to timely reprimand and speak out against the acts referenced above, and for all of the other reasons set forth herein including, without limitation, their failure to take the steps necessary to prevent the occurrence of such reprehensible acts, Defendants ratified

said actions and, accordingly, are vicariously liable for the actions of their entities and individual employees.

113.    At all relevant times, Defendants, CRGC, John Does 1 – 100 and ABC Entities 1-10 failed to adequately and properly:

    a.   employ processes that require its employees to report, screen out and/or prevent the abuse of children by staff;

    b.   supervise their agents, employees, servants, staff members, and/or the agents, employees, servants, staff members, and/or agents under their supervision; and

    c.   train their agents, employees, servants and/or staff members.

114.    The negligent, reckless, intentional, outrageous, deliberately and recklessly indifferent and unlawful acts and omissions of Defendants, CRGC, John Does 1 – 100 and ABC Entities 1-10, as set forth above and herein, consisted of, *inter alia*:

    a.   permitting staff to physically abuse Minor-Plaintiff;

    b.   permitting and/or allowing an environment in which staff violated or engaged in conduct that would constitute violations of Pennsylvania criminal statutes prohibiting Endangering the Welfare of a Child (18 Pa. C.S.A. § 4304) constituting negligence per se;

    c.   failing to properly and adequately supervise and discipline its employees to prevent the physical, verbal and psychological abuse that occurred to Minor-Plaintiff;

    d.   failing to adopt, enforce and/or follow adequate policies and procedures for the protection and reasonable supervision of children who were under the care and supervision of Defendant, DJCDC, including Minor-Plaintiff, and/or failing to implement and comply with such procedures which had been adopted;

e.    failing to implement, enforce and/or follow adequate protective and supervisory measures for the protection of minors under Defendants' care/treatment at DCJDC;

f.    allowing children to be placed in isolation;

g.    creating an environment that facilitated physical, verbal and psychological abuse by DCJDC staff;

h.    failing to adopt, enforce and/or follow policies and procedures to protect minors against harmful influence and contact by DCJDC guards and staff;

i.    ratifying the staff and guards conduct;

j.    failing to adopt/implement and/or enforce policies and procedures for the reporting to law enforcement, Office of Children and Youth, authorities within Defendants' ability, and/or other authorities of harmful acts to children;

k.    failing to report staff and guards' harmful acts to authorities;

l.    violating the requirements of Pennsylvania's Child Protective Services Law, 23 § 6311(a) and (b), constituting negligence per se;

m.    ignoring, concealing, or otherwise mitigating the seriousness of the known danger that DCJDC and its staff posed; and

n.    failing to properly supervise, discipline and/or train its employees.

115.    As a proximate and direct result of Defendants', CRGC, John Does 1 – 100 and ABC Entities 1-10, negligence and/or reckless conduct described herein, Minor-Plaintiff sustained physical and emotional injuries, embarrassment, mental anguish, pain and suffering and loss of enjoyment of life and life'spleasures.

116.    Minor-Plaintiff, S.B., will likely be caused to incur medical expenses and may likely incur a loss of earning capacity  in the future.

117.    Defendant CGRC, a youth counseling service, John Does 1-100 and/or ABC Entities 1-10, knew or should have known about the severe risk of their failure to take any appropriate precautions outlined above and acted with a reckless disregard for such risk, for which Minor-Plaintiff is entitled to and hereby seeks punitive damages pursuant to Pennsylvania law.

118.    Defendants', CRGC, John Does 1 – 100 and ABC Entities 1-10, actions and failures as described herein are outrageous and were done recklessly with a conscious disregard of the risk of harm to Minor-Plaintiff for which Minor-Plaintiff is entitled to and hereby seeks punitive damages.

### COUNT II – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### Plaintiffs v. CRGC, John Does 1-100 and ABC Entities 1-10

119.    Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

120.    Defendants, CRGC, John Does 1 – 100 and ABC Entities 1-10,  by  and  through their  contact  with Minor-Plaintiff as  described  above, negligently and/or recklessly committed multiple acts of extreme and outrageous conduct which caused severe emotional, psychological, and psychiatric injuries, distress, and harm to Minor-Plaintiff, which also manifested in physical injuries to Minor-Plaintiff as set forth above in an extreme, outrageous and harmful manner.

### COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Plaintiffs v. CRGC, John Does 1-100 and ABC Entities 1-10

121.    Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

122.    Defendants, CRGC, John Does 1 – 100 and ABC Entities 1-10, by and through their contact with Minor-Plaintiff, as described above, intentionally committed multiple acts of extreme and outrageous conduct which caused severe emotional, psychological, and psychiatric injuries, distress, and harm to Minor-Plaintiff, which also manifested in physical injuries to Minor-Plaintiff as set forth above, in an extreme, outrageous and harmful manner.

## COUNT IV - NEGLIGENT FAILURE TO RESCUE
### Plaintiffs v. CRGC, John Does 1-100 and ABC Entities 1-10

123.   Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint if fully set forth herein.

124.   The negligence and recklessness of Defendants in directly and proximately causing the injuries and damages to Minor-Plaintiff, described herein, includes:

    a.  failing to take reasonable and necessary steps to rescue Minor-Plaintiff after placing her in a position of harm;

    b.  failing to exercise reasonable and necessary steps to prevent further harm when knowing that Minor-Plaintiff was in danger;

    c.  failing to take reasonable and necessary steps to give aid or assistance to Minor-Plaintiff to prevent further harm;

    d.  failing to take reasonable and necessary steps to prevent the delay in the appropriate care of Minor-Plaintiff; and

    e.  violation of the duties set forth in Restatement (Second) of Torts, Sections 314A & 322, as adopted in Pennsylvania.

125.   As a proximate and direct result of Defendants', CRGC, John Does 1 – 100 and ABC Entities 1-10, breaches described in the preceding paragraph, Minor-Plaintiff sustained psychological and physical harms and injuries as described above.

126.   The aforementioned incidents resulted from the negligence, recklessness and/or intentional acts of Defendants, CRGC, John Does 1 – 100 and ABC Entities 1-10, and was due in no manner whatsoever to any act or failure to act on the part of Plaintiffs.

## COUNT V - FAILURE TO WARN
### Plaintiffs v. Defendants CRGC, John Does 1-100 and ABC Entities 1-10

127.   Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

128.   At all times material hereto, Defendants, CRGC, John Does 1 – 100 and ABC

Entities 1-10, who were contracted to provide mental health services to the children housed at DCJDC, owed a duty to Minor-Plaintiff and the public to warn about DCJDC and its staff when they knew, or should have known, that the staff and facility posed a risk to all persons and in particular to minors being detained in their juvenile detention center.

129.   Defendants, CRGC, John Does 1 – 100 and ABC Entities 1-10, breached their duty to warn that DCJDC staff members, specifically the guards, posed a risk of harm. Defendants failed to exercise the reasonable care, skill, and diligence of an ordinarily prudent mental health service/care agency would, in warning minors and the public of the risks and dangers that were occurring at the Delaware County Juvenile Detention Center.

130.   No negligence on the part of the Plaintiffs contributed to the happening of the occurrence.

131.   Minor-Plaintiff's injuries and damages as recited herein, occurred directly and were proximately caused by Defendants', CRGC, John Does 1 – 100 and ABC Entities 1-10, breach of duty to warn as described herein.

132.   As a direct and proximate result of Defendants', CRGC, John Does 1 – 100 and ABC Entities 1-10, failure to warn the public and Plaintiffs about DCJDC and its staff, Minor-Plaintiff suffered serious injury, has required medical care and attention; has suffered mental anguish, severe pain and agony as a result of the happening of her time at DCJDC; and was otherwise injured and damaged, for which claim is made.

## COUNT VI -NEGLIGENCE *PER SE*
### Plaintiffs v. CRGC, John Does 1-100 and ABC Entities 1-10

133.   Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

134.   Defendants, CRGC, John Does 1 – 100 and ABC Entities 1-10, knew, had knowledge or had reasonable suspicion of harmful acts being committed on minors by staff at DCJDC and negligently, recklessly and/or intentionally violated their statutory duty to report such

abuse as required by Pennsylvania's Child Protective Services Law (PCPSL), 23 § 6311(a) and (b) et seq.

135.    Defendants, CRGC, John Does 1 – 100 and ABC Entities 1-10, knew, had knowledge or had reasonable suspicion of harmful acts and/or other misconduct being committed by guards on children and/or other minors, including Minor-Plaintiff, and negligently, recklessly and/or intentionally violated their statutory due to protect such children as required under Pennsylvania law - Endangering the Welfare of a Child (18 Pa. C.S.A. § 4304).

136.    Defendants knew, CRGC, John Does 1 – 100 and ABC Entities 1-10, had knowledge or had reasonable suspicion of harmful acts and/or other misconduct being committed by guards on children and/or other minors and negligently, recklessly and/or intentionally violated their statutory duty to report such abuse and ensure the well-being of these children.

137.    Defendants', CRGC, John Does 1 – 100 and ABC Entities 1-10, violations constitute negligence per se under Pennsylvania law.

138.    Defendants', CRGC, John Does 1 – 100 and ABC Entities 1-10, negligent, reckless and/or intentional failure to report such harmful acts allowed DCJDC staff to abuse Minor-Plaintiff, causing continuing harm to Minor-Plaintiff and the injuries and damages described above.

139.    Such failure on the part of Defendants, CRGC, John Does 1 – 100 and ABC Entities 1-10, was reckless, intentional, knowing, grossly negligent, deliberately and recklessly indifferent, outrageous, malicious and/or was a reckless and conscious disregard for the safety of Plaintiffs.

### *Federal Claims*

### COUNT VIII - 42 U.S.C. § 1983
### Plaintiffs v. DC, DCJDC, DHS, John Does 1-100 and ABC Entities 1-10
### Excessive and Unreasonable Force in Violation of the Fourth, Eighth and Fourteenth Amendments

140.    Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

141.    The Fourth, Eighth and Fourteenth Amendments to the United States Constitution protect Minor-Plaintiff from physical abuse and unreasonable or excessive force from DC and DCJDC. These amendments also required Defendants, including DC, DCJDC, DHS, John Does 1-100 and ABC Entities 1-10, to establish policies and practices to protect Minor-Plaintiff from known harms and known patterns of constitutional deprivations.

142.    Defendants failed, with deliberate indifference, to provide a safe custodial setting for Minor-Plaintiff, by failing to properly train, supervise and discipline staff at the school, including the John Doe Defendants. As a proximate result of Defendants' policies, practices and customs, the staff at DCJDC, including the John Doe Defendants, subjected Minor-Plaintiff to excessive and unreasonable force, a failure to protect from harm, and other abuses alleged in this Complaint. Defendants, DC, DCJDC and its staff and DHS, violated Minor-Plaintiff's Fourth, Eighth and Fourteenth Amendment rights when they physically, verbally, and psychologically abused her and took no action to prevent such abuse despite their knowledge and being on notice of what was occurring at DCJDC.

143.    The force used in each of these instances was objectively unreasonable, malicious, sadistic, intended to cause harm, and without any legitimate penological purpose.

144..    Defendants served an exclusively public function and acted or failed to act under the color of state law.

145.    Defendants' acts and omissions as set forth in the preceding paragraphs of this Complaint shock the conscience, deprived Minor-Plaintiff of her Fourth, Eighth and Fourteenth Amendment right to be protected from physical, mental and psychological abuse and neglect and unreasonable or excessive force, and caused Minor-Plaintiff grave physical, emotional, psychological and other harm.

146..    The acts and omissions by the Defendants, DC, DCJDC and DHS, as described in the preceding paragraphs of this Complaint, were the direct and proximate cause of Minor-Plaintiff's damages and injuries and are therefore liable to Plaintiffs under 42 U.S.C. § 1983 and

the Fourth, Eighth and Fourteenth Amendments.

## COUNT IX: 42 U.S.C. §1983
### Plaintiffs v. DC, DCJDC, DHS, John Does 1-100 and ABC Entities 1-10
### Failure to Intervene

147.    Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

148.    By their conduct and under color of state law, Defendants, DC, DCJDC, DHS, John Does 1-100 and ABC Entities 1-10, had knowledge and opportunities to intervene and stop the abuse that was occurring to Minor-Plaintiff at DCJDC to prevent the violation of her clearly established constitutional right to be free from unreasonable and excessive force and cruel and unusual punishment but, with deliberate indifference, failed to do so.

149.    Defendants', DC, DCJDC, DHS, John Does 1-100 and ABC Entities 1-10, failures to intervene violated Minor-Plaintiff's clearly established constitutional right to be free from unreasonable and excessive force and cruel and unusual punishment as guaranteed under the Eighth and Fourteenth Amendments.

150.    Defendants', DC, DCJDC, DHS, John Does 1-100 and ABC Entities 1-10, acts and omissions, as described in the preceding paragraphs of this Complaint, were the direct and proximate cause of Minor-Plaintiff's damages and injuries and are therefore liable to her under 42 U.S.C. § 1983.

## COUNT X: 42 U.S.C. §1983
### Plaintiffs v. DC, DCJDC, DHS, John Does 1-100 and ABC Entities 1-10
### Deprivation of Rights by Virtue of State Created Danger

151.    Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

152.    As set forth herein, this is a civil rights action brought pursuant to 42 U.S.C. § 1983 that challenges the constitutionality of the actions by Defendants, DC, DCJDC, DHS, John Does 1-100 and ABC Entities 1-10, that resulted in severe injuries to Minor-Plaintiff.

153.    At all times relevant hereto, Defendants, DC, DCJDC, DHS, John Does 1-100 and

ABC Entities 1-10, were all "persons" pursuant to 42 U.S.C. §1983 as all were providing care, custody and/or control over Minor-Plaintiff.

154.    The specific harms to which Defendants, DC, DCJDC, DHS, John Does 1-100 and ABC Entities 1-10, exposed Minor-Plaintiff were foreseeable and direct in that they knew that allowing continuous and regular abuse to occur to Minor-Plaintiff and other children at DCJDC would result in severe and lasting harm to Minor-Plaintiff.

155.    At all times material hereto, Defendants, DC, DCJDC, DHS, John Does 1-100 and ABC Entities 1-10, were bound, as previously set forth herein, by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution as well, upon information and belief, their own policies, rules and regulations for the management, care and oversight of children placed in juvenile detention facilities in Pennsylvania.

156.    In direct contravention and violation of the Fourth, Eighth and Fourteenth Amendments as set forth above and, upon information and belief, in violation of their own policies and regulations, Defendants, DC, DCJDC, DHS, John Does 1-100 and ABC Entities 1-10, recklessly, willfully and with deliberate indifference, physically, verbally and psychologically abused Minor-Plaintiff.

157.    At all times relevant hereto, Defendants, DC, DCJDC, DHS, John Does 1-100 and ABC Entities 1-10, were acting under "color of state law" for purposes of 42 U.S.C. § 1983 by placing Minor-Plaintiff in the Delaware County Juvenile Detention Center.

158.    Defendants, DC, DCJDC, DHS, John Does 1-100 and ABC Entities 1-10, while acting under color of state law, unlawfully, and/or unreasonably, willfully, recklessly, maliciously and/or with deliberate indifference to Minor-Plaintiff's rights, violated 42 U.S.C. §1983 and deprived Minor-Plaintiff of her rights as guaranteed under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, similar provisions of the Pennsylvania Constitution, Federal Law, State Law, and/or local law in that these Defendants, without lawful basis, caused the aforementioned injuries and damages to Minor-Plaintiff by creating the danger

to which Minor-Plaintiff was exposed, in violation of her aforesaid guaranteed rights, as set forth in the preceding paragraphs of this Complaint.

159.     The danger created by Defendants, DC, DCJDC, DHS, John Does 1-100 and ABC Entities 1-10, as set forth above, was foreseeable and direct.

160.     Through its failures, acts and omissions as set forth above, Defendants, DC, DCJDC, DHS, John Does 1-100 and ABC Entities 1-10, created a degree of culpability that shocks the conscience.

161.     In creating the danger as set forth above, Defendants, DC, DCJDC, DHS, John Does 1-100 and ABC Entities 1-10, acted in a willful disregard for the safety of Minor-Plaintiff.

162.     As the facts set forth in this Complaint demonstrate, Defendants, DC, DCJDC, DHS, John Does 1-100 and ABC Entities 1-10, knew or should have known that DCJDC was abusing minors, including Minor-Plaintiff, and that by failing to take action to stop such abuses, Minor-Plaintiff was exposed to serious harm and established a deliberate indifference on their behalf towards her.

163.     Defendants', DC, DCJDC, DHS, John Does 1-100 and ABC Entities 1-10, acts and omissions, as described in the preceding paragraphs of this Complaint, were the direct and proximate cause of Minor-Plaintiff's damages and injuries and are therefore liable to her under 42 U.S.C. § 1983.

**COUNT X: 42 U.S.C. §1983**
**Plaintiffs v. DC, DCJDC, DHS, John Does 1-100 and ABC Entities 1-10**
**Municipal Liability Claim**

164.     Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

165.     Defendants, DC, DCJDC, DHS, John Does 1-100 and ABC Entities 1-10, by and through is final policymakers, had in force and effect during the time of the abuse that occurred to Minor-Plaintiff and other children, and for many years preceding these abuses coming publicly to light, a policy, practice or custom of unconstitutional misconduct in the care, custody, supervision

and/or control of minors that were placed in the Defendant's, Delaware County, juvenile detention center at Lima. Such unconstitutional misconduct include the acts and abuses that are described in the preceding paragraphs of this Complaint.

166.  Defendants, DC, DCJDC, DHS, John Does 1-100 and ABC Entities 1-10, had actual or constructive notice of these policies, practices and customs, but repeatedly failed to make any meaningful investigation into the complaints that were raised about DCJDC and failed to take appropriate remedial and/or disciplinary actions to curb this pattern of misconduct.

167.  Such unconstitutional municipal customs, practices and/or policies were the moving force behind the abuse that occurred to S.B. and the injuries and damages she sustained as a result.

168.  Defendants, DC, DCJDC, DHS, John Does 1-100 and ABC Entities 1-10, also failed, with deliberate indifference, to provide a safe custodial setting for Minor-Plaintiff, by failing to properly train, supervise and discipline staff at the school, including the John Doe Defendants. As a direct and proximate result of Defendants' failure to train, supervise, monitor, discipline, oversee and control the staff at DCJDC, including the John Doe Defendants, Minor-Plaintiff was subjected to excessive and unreasonable force, a failure to protect from harm, and other abuses as set forth in this Complaint. Defendants, DC, DCJDC and its staff, DHS, John Does 1 – 100 and ABC Entities 1-10, violated Minor-Plaintiff's Fourth, Eighth and Fourteenth Amendment rights when they physically, verbally, and psychologically abused her and took no action to prevent such abuse despite their knowledge and being on notice of what was occurring at DCJDC.

169.  Defendants', DC, DCJDC, DHS, John Does 1-100 and ABC Entities 1-10, acts and omissions, as described in the preceding paragraphs of this Complaint, were the direct and proximate cause of Minor-Plaintiff's damages and injuries and are therefore liable to her.

## **PRAYER FOR RELIEF**

**WHEREFORE,** in consideration of the above claims, Plaintiffs, C.B. and S.B., request that due to all Defendants' conduct as alleged herein, that Minor-Plaintiff be awarded damages

including, but not limited to, the following:

a.   All available compensatory damages for the described losses with respect to each cause of action;

b.   Past and future medical expenses, as well as the costs associated with past and future life care;

c.   Past and future lost wages and loss of earning capacity;

d.   Past and future emotional distress;

e.   Consequential and/or special damages;

f.   All available non-economic damages, including without limitation pain, suffering, and loss of enjoyment of life;

g.   Punitive damages with respect to each cause of action;

h.   Reasonable and recoverable attorney's fees;

i.   Costs of this action; and

j.   Pre-judgement and all other interest recoverable.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.


Respectfully Submitted,

**VSCP LAW**

/s/ Gregory S. Spizer
Gregory S. Spizer
1500 Market Street
East Tower, 12th Floor
Philadelphia, Pennsylvania 19102
Attorney for Plaintiffs


Date: April 14, 2021