JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

C.B. As The Parent and Natural Guardian of S.B, A Minor

## DEFENDANTS

Delaware County; Delaware County Juvenile Detention Center;  et. al.

**(b)** County of Residence of First Listed Plaintiff   Chester
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Delaware
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Gregory S. Spizer, VSCP LAW, 2001 Market St, Suite 3700, Phila., PA 19103, 215-960-0402

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C.  §1983
Brief description of cause:
Defendants' continuous abuse of Minor-Plaintiff

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ over $150,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE   Michael M. Baylson

DOCKET NUMBER   2:21-CV-01408 MMB

DATE
September 27, 2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ c/o VSCP LAW, 2001 Market Street, Suite 3700, Philadelphia, PA 19103

Address of Defendant: _____ 201 West Front Street, Media, PA 19063

Place of Accident, Incident or Transaction: _____ 370 N. Middletown Road, Lima, PA 19037

---

**RELATED CASE, IF ANY:**

Case Number: _____ 2:21-CV-01408 _____ Judge: _____ Michael M. Baylson _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? — Yes ☐ No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? — Yes ☑ No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? — Yes ☐ No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? — Yes ☐ No ☑

I certify that, to my knowledge, the within case ☐ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 09/27/2021 _____ _____ 82435

*Attorney-at-Law / Pro Se Plaintiff* — *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☑ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify):* _____
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**

*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Gregory S. Spizer, Esq. _____, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 09/27/2021 _____ _____ 82435

*Attorney-at-Law / Pro Se Plaintiff* — *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| **C.B. AS THE PARENT AND NATURAL** | : | |
| **GUARDIAN OF S.B., A MINOR** | : | |
| | : | |
| v. | : | |
| | : | NO.  2:21-CV-1740 |
| | | |
| **DELAWARE COUNTY JUVENILE** | : | |
| **DETENTION CENTER, CHILD GUIDANCE** | : | |
| **RESOURCE CENTER, JOHN DOES 1-100** | : | |
| **AND ABC ENTITIES 1-10, ET. AL** | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See §1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS**:

(a)     Habeas Corpus - Cases brought under 28 U.S.C. §2241 through §2255.          (          )

(b)     Social Security - Cases requesting review of a decision of the Secretary
        of Health and Human Services denying plaintiff Social Security Benefits.          (          )

(c)     Arbitration - Cases required to be designated for arbitration under Local
        Civil Rule 53.2.          (          )

(d)     Asbestos - Cases involving claims for personal injury or property damage
        from exposure to asbestos.          (          )

(e)     Special Management - Cases that do not fall into tracks (a) through (d)
        that are commonly referred to as complex and that need special or intense
        management by the court.   (See reverse side of this form for a detailed
        explanation of special management cases.)          (     X    )

(f)     Standard Management - Cases that do not fall into any one of the other
        tracks.          (          )

| | | |
|---|---|---|
| 9/27/2021 | Gregory S. Spizer, Esq. | Plaintiff |
| Date | Attorney-at-Law | Attorney for |
| | | |
| 215-960-0402 | 215-960-0384 | gspizer@vscplaw.com |
| Telephone | Fax Number | E-Mail Address |

## Civil Justice Expense and Delay Reduction Plan
## Section 1:03 - Assignment to a Management Track

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 3 or 7, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

## SPECIAL MANAGEMENT CASE ASSIGNMENTS
## (See §1.02(e) Management Track Definitions of the
## Civil Justice Expense and Delay Reduction Plan)

Special management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.   This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may requires special or intense management by the court due to one or more of the following factors:   (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases.   Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class act ions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **C.B. AS THE PARENT AND NATURAL GUARDIAN OF S.B., A MINOR,** | : | |
| **Plaintiffs,** | : | |
| **v.** | : | **CIVIL ACTION** |
| **DELAWARE COUNTY** | : | **NO. 21-1740** |
| **AND** | : | **JURY TRIAL DEMANDED** |
| **DELAWARE COUNTY JUVENILE DETENTION CENTER** | : | |
| **AND** | : | |
| **CHILD GUIDANCE RESOURCE CENTER** | : | |
| **AND** | : | |
| **MEG SNEAD, in her individual capacity;** | : | |
| **AND** | : | |
| **ANDREW BARNES, in his individual capacity;** | : | |
| **AND** | : | |
| **JON RUBIN, in his individual capacity;** | : | |
| **AND** | : | |
| **TERESA D. MILLER, in her individual capacity;** | : | |
| **AND** | : | |
| **THEODORE DALLAS, in his individual capacity;** | : | |
| **AND** | : | |
| **CATHY UTZ, in her individual capacity;** | : | |
| **AND** | : | |

**MARK A. MURRAY, in his official and**    :
**individual capacity;**    :
    :
**AND**    :
    :
**JOHN DOES 1-100**    :
    :
**AND**    :
    :
**ABC ENTITIES 1-10**    :
    :
        **Defendants.**    :

## FIRST AMENDED COMPLAINT – CIVIL ACTION

Plaintiff, C.B., as the Parent and Natural Guardian of S.B., a minor, by and through her attorneys, VSCP LAW, file this Amended Complaint against Defendants, Delaware County, Delaware County Juvenile Detention Center, Child Guidance Resource Center, Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murry, John Does 1-100, and ABC Entities 1-10, and avers as follows:

### *Introduction*

1.    Pennsylvania has a long and disturbing history of child abuse and sexual assault at its juvenile disciplinary institutions. [1]

2.    After abuse comes to light at either private or governmental juvenile facilities, the pattern is always the same: task forces are formed, reports are authored and statements are made that such atrocities must never be allowed to occur.  Yet despite these promises, abuses continue to occur at Pennsylvania's juvenile disciplinary institutions that have been established to care for, protect and rehabilitate our children.  Worse yet is the well-known fact that reported abuse represents only a

---

[1] *See* Lisa Pilnik, Robert G. Schwartz, Karen Lindell, Jessica Feierman and Christina Sorenson, *Transforming Justice – Bringing Pennsylvania's Young People Safely Home from Juvenile Justice Placements,* Juvenile Law Center, (2019), https://jlc.org/sites/default/files/attachments/2019-10/Transforming_Justice_final.pdf; *see also* Philadelphia Inquirer , Nov. 2019, *Pa. governor's council recommends sweeping changes to juvenile justice programs,* https://www.inquirer.com/news/pa-governor-wolf-glen-mills-abuse-overhaul-dhs-recommendations-20191101.html; and the "Kids for Cash" Juvenile Scandal, https://www.cnn.com/2009/CRIME/02/23/pennsylvania.corrupt.judges/.

fraction of the actual abuses that occur as many incidents go unreported, even in cases where the abuse is known and/or suspected to have occurred.[2]

3.      The purpose of juvenile disciplinary institutions is not to punish, but to provide children with the appropriate care, supervision, and rehabilitation. Under Pennsylvania's Juvenile Act, disciplinary facilities such as the Delaware County Juvenile Detention Center ("DCJDC") are obligated "[t]o provide for care, protection, safety and wholesome mental physical development of children."[3] Unfortunately, for the boys and girls who were committed to the Delaware County Juvenile Detention Center, nothing could have been further from the truth.

4.      For decades at DCJDC, a culture of abuse not only festered, but was perpetrated by all Defendants at every level through repeated cover ups. From guards to counselors to superiors of every level, various abuses were both known and ignored.

5.      Under the authority of Defendant, Director Mark A. Murray (hereinafter "Murray"), children at Delaware County Juvenile Detention Center were physically, mentally, and/or sexually abused and neglected by staff and peers. Perhaps worse than the abuse itself was the culture, one not simply of tolerance *of* abuse, but enthusiasm *for* abuse. This culture was enabled and advanced by Murray and his staff, as evidenced by their continued failure to report and/or prevent suspected, reasonably knowable, and/or known child abuse and neglect.

6.      Sadly, this barbaric abuse continued unchecked due to the Pennsylvania Department of Human Service's ("PA-DHS") callous disregard for the safety and well-being of the youth in its care. PA-DHS licenses, oversees, and regulates child residential facilities as defined by 55 Pa. Code

---

[2] *See* Clifton Adcock, *Most Juvenile Facilities Don't Comply with U.S. Rape Prevention Standards*, OKLA. WATCH (Feb. 25, 2016), http://oklahomawatch. org/2016/02/25/most-juvenile-facilities-dont-comply-with-u-s-rape-prevention-law. *See also* Joaquin Sapien, *Report Cities Failure to Act Against Abusers of Juveniles in Detention*, PROPUBLICA (Feb. 3, 2016), https://www.propublica.org/article/report-citesfailure-to-act-against-abusers-of-juveniles-in- detention

[3] 42 Pa.C.S. §6301(b)(1.1)

Ch. 3800 to protect the health, safety and well-being of youth receiving care in a child residential facility.

7.     Despite numerous publicly documented incidents of abuse by DCJDC staff going back decades that were reported to both county and state agencies and employees, not once did officials at PA-DHS take meaningful steps to protect youth at DCJDC. In fact, it was not until March of 2021 that DCJDC was closed and that was at the direction of Delaware County, *not* DHS. In fact, incredibly, PA-DHS has not revoked the license of the facility to operate *to this day*. The failure of officials at PA-DHS, named and identified in this Amended Complaint, to provide sufficient oversight of DCJDC and their continued licensing of the facility despite DCJDC's continued violations of the minimum standards of Chapter 3800 placed Plaintiff perpetually in harm's way.

8.     The matter before this Court is also about Defendants, Delaware County, Delaware County Juvenile Detention Center, and the individual defendants' failure to protect S.B. and other children from severe and pervasive abuse that was rampant for years, perpetrated by staff, and the blatant refusal of their employees to report known and/or suspected child abuse that was being and/or had been committed upon children at DCJDC, of which they knew or should have known, as well as the unconscionable and outrageous conduct of Defendants in allowing DCJDC to exist as it did, to retain staff who not only abused and neglected children, but also threatened and intimidated minors to stay silent, after knowing of multiple instances of abuse and intimidation involving multiple staff members of DCJDC, thereby exposing children, including Minor-Plaintiff, S.B., again and again to known danger.

9.     This matter is also about the cover up of abuse perpetrated by Delaware County and DCJDC and their staff/representatives/agents along with Defendant, Child Guidance Resource Center and individual Defendants, in choosing to protect their own reputation and bottom line at the expense of the safety and well-being of children in need and in their care, custody, and/or control. The full extent of their efforts in fostering a culture of secrecy that allowed such pervasive abuse of

children and the effects of same may never be fully known.

10.     Delaware County is required by Pennsylvania law to provide oversight and management of the Delaware County Juvenile Detention Center by appointing civilians to manage the facility, but instead delegated this non-delegable duty to a separate body, the Board of Judges. This structure unlawfully diverted oversight and management away from private civilians - all in violation of Pennsylvania law.

## *The Parties*

11.     Plaintiff, C.B., is the parent and natural guardian of S.B., a minor female.  Their full names and address are not contained in this Complaint so as to protect their privacy and identity as S.B., (hereinafter also known as "Minor-Plaintiff"), incurred injuries and damages of a sensitive nature as a result of the intentional and negligent acts and failures of Defendants outlined below. Information which would or could identify C.B. or S.B. is not contained herein. Plaintiffs may be contacted through counsel as outlined herein. C.B. and S.B. are citizens of the Commonwealth of Pennsylvania.

12.     Defendant, Delaware County, ("DC"), is a local government unit and/or agency of the Commonwealth of Pennsylvania with business offices located at 201 West Front Street, Media, Pennsylvania 19063.  DC is a "person" as the term is used in 42 U.S.C. § 1983.

13.     Further, Defendant, Delaware County, was the owner and/or operator of the DCJDC, as required by law under 16 P.S. §5538.

14.     Upon information and belief, at all relevant times, the Delaware County Board of Managers, which is comprised of agents of Defendant, Delaware County, was regularly certified by PA-DHS to operate the DCJDC pursuant to 55 Pa. Code Chapter 3800: Child Residential and Day Treatment Facilities.[4]

---

[4] For example, *see* Exhibit "C," attached, which is a certificate of compliance issued by PA-DHS (formerly known as the Department of Public Welfare) to the Delaware County Board of Managers for the operation of the Delaware County Juvenile Detention Center between August 13, 2009 – August 13, 2010.  Notably, even in 2009, the facility was issued a certificate to operate despite a noted violation of 55 Pa. Code §3800.141(a) for "fail[ing] to complete and

15.     Upon further information and belief, DC pays property taxes on the DCJDC property, paid and/or pays the employees who worked at DCJDC,[5] and contracts with other service providers on behalf of the DCJDC.[6]

16.     Defendant, Delaware County Juvenile Detention Center, ("DCJDC"), is a youth detention center, located at 370 Middletown Road, Lima, PA, 19037, owned, controlled, and operated by Defendant, Delaware County, Pennsylvania. Specifically, DCJDC is an activity of Delaware County, which is a political subdivision of the Commonwealth of Pennsylvania and body politic and lies within this district.

17.     According to its website and at all times relevant hereto, the DCJDC was once governed by the Board of Judges, under the direction of President Judge Kevin F. Kelly.

18.     However, as set forth herein, Defendant, DCJDC is not a part of the judiciary or judicial branch and the DCJDC is not an arm of the Commonwealth.

19.     At all relevant times, the DCJDC was an entity and arm of Delaware County and under Delaware County control.

20.     Moreover, not only was the DCJDC a Delaware County-run facility but any oversight or governance of the DCJDC by the Board of Judges was an impermissible governing structure which was established by Defendant, Delaware County. See 16 P.S. §5538.

21.     At all relevant times hereto, the individual members of the Board of Judges, appointed by Delaware County to oversee and manage the DCJDC, were acting as agents of

---

document the required 24 hour Health and Safety Assessment within the required timeframe." *See* Exhibit C.

[5] Plaintiffs have not been able to engage in discovery on the full extent of the employment relationship between the DCJDC staff and the County of Delaware. However, upon information and belief, the County hires and pays these individuals. For example, the attached Arbitration Decision reflects that a DCJDC employee's termination grievance was governed by the Collective Bargaining Agreement between the County of Delaware and the County of Delaware Public Employees' Association, Local 3107. See Exhibit B. This clearly dictates that DCJDC staff are employees of Defendant, DC. Further, John Clark, Director of Labor Relations for the County was specifically copied as a recipient of a court order reviewing the termination of a detention officer at the Delaware County Juvenile Detention Center. See Exhibit "B." Moreover, in this same Order/case, Delaware County is referenced.  See Exhibit  "B".

[6] One Affiant and employee of Defendant, CGRC, identified in Exhibit A to this Amended Complaint describes the value of these contracts between the county and CGRC as a basis for concealing the known abuses, stating: CGRC supervisors explained that it was critical for CGRC to maintain a friendly relationship with the Office of Juvenile Probation, which has influence over whether the CGRC maintains its lucrative contract with Delaware County." See Exhibit A.

Delaware County separate and apart from any judicial employment, duties, or functions.

22.     Therefore, even if the 32nd Judicial District was engaged in some oversight of the DCJDC, which is not admitted by Plaintiffs at the time of filing this Amended Complaint, the DCJDC is not an entity of the judicial branch and any act of governance of the DCJDC carried out by a judge is expressly not a judicial act under the laws of Pennsylvania. See 16 P.S. §§5537; 5538.

23.     Service on the Board of Advisors, which oversees Defendant DCJDC, is not a judicial act, and is only to be carried out by a judge in the occasional event of a vacancy on the board by a member appointed by a judge, as specifically assigned by law in 16 P.S. § 5538 which requires that a board of advisors "shall" be comprised of "the county chief executive, the county controller, and eight private citizens, three to be appointed by the president judge of the court of common pleas and the other five to be appointed by the county executive."

24.     By structuring the oversight of the DCJDC as it did, Delaware County was not acting in compliance with Pennsylvania law at the time of Plaintiff's admission to DCJDC.

25.     In fact, Delaware County[7] is now shifting oversight and management of the DCJDC to a 10-member Board of Managers, which "will consist of three councilmembers, the county controller, and six citizen appointments: three chosen by chair of council and three chosen by President Judge Kevin Kelly."[8]

26.     This is further evidence that Delaware County had and continues to have control and oversight of operations at DCJDC.

27.     At all relevant times, DCJDC was licensed as a residential facility pursuant to 55 Pa. Code  § 3800.11 by PA-DHS.

28.     The license was issued to the Delaware County Board of Managers.[9]

---

[7] Delaware County is managing a recent shift in leadership of the DCJDC, further evidencing the County's ownership and operation of this county facility. See Cooper, Kenny Delaware County to create board to oversee juvenile detention,  Whyy.org ,  May 14, 2021, https://whyy.org/articles/following-abuse-allegations-delco-to-create-oversight-board-to-lead-juvenile-detention-center/, a copy of which is attached hereto as Exhibit "D."
[8] Id.
[9] See Exhibit C.

7

29.     Institutions like DCJDC receive a certificate of compliance from PA-DHS if they follow all applicable statutes, ordinances and regulations.

30.     Upon recognition that the DCJDC was not structured in accordance with Pennsylvania law, PA-DHS should have immediately revoked its license.

31.     Defendant, Meg Snead, is an adult individual, and the Acting Secretary of the Pennsylvania Department of Human Services (PA-DHS) and is sued solely in her individual capacity.

32.     Defendant Snead directly and indirectly controlled and was responsible for PA-DHS's child welfare and juvenile justice policies and practices during the period she was and is Secretary of PA-DHS during the relevant time period.

33.     Defendant, Andrew Barnes, is an adult individual, and the Executive Deputy Secretary of the PA-DHS and is sued solely in her individual capacity.

34.     Defendant Barnes directly and indirectly controlled and was responsible for PA-DHS's child-welfare and juvenile justice policies and practices during the period he was and is Executive Deputy Secretary of PA-DHS during the relevant time period.

35.     Defendant, Jon Rubin, is an adult individual, and was, at all times relevant hereto, the Deputy Secretary of the Office of Children, Youth and Families (OCYF) within PA-DHS, and is sued in his individual capacity.

36.     Defendant Rubin was directly and indirectly responsible for the OCYF child welfare and juvenile justice practices during the relevant time period.

37.     Defendant Teresa D. Miller was the Secretary of the PA-DHS since on or about August 2017 until April 30, 2021 and is sued solely in her individual capacity. Defendant Miller is now President and CEO of Kansas Health Foundation which has its headquarters at 309 E. Douglas, Wichita, KS 67202.

38.     Defendant Miller directly and indirectly controlled and was responsible for PA-DHS's child welfare and juvenile justice policies and practices. Secretary Miller maintained her

principal office at 625 Forster Street, Harrisburg, PA 17120.

39.     Defendant Theodore Dallas was Secretary of PA-DHS from the period of June 2015 until on or about August 2017 and is sued solely in his individual capacity. Defendant Dallas directly and indirectly controlled and was responsible for PA-DHS's child welfare and juvenile justice policies and practices during the period he was Secretary of PA-DHS. Former Secretary Dallas is now President and Chief Operations Officer at Merakey Foundation, the corporate headquarters for which is located at 620 E. Germantown Pike, Lafayette Hill, PA 19444.

40.     Defendant Cathy Utz was, at all relevant times, the Deputy Secretary for OCYF within PA-DHS during the relevant time period and is sued in her individual capacity. Defendant Utz was directly and indirectly responsible for the OCYF child welfare and juvenile justice practices during the relevant time period. Former Deputy Secretary Utz is now an employee of Computer Aid, Inc. which maintains its headquarters at 1390 Ridgeview Drive, Allentown, PA 18104.

41.     Defendant, Mark A. Murray, is an adult individual, employed by the County of Delaware, and the Director of the Delaware County Juvenile Detention Center, and is responsible for ensuring that the DCJDC provides for the maintenance and care of children while in the custody of the juvenile detention facility.

42.     Defendant Murray is sued in his official and individual capacities for his actions and/or inactions made under color of state law and in violation of Plaintiffs' Constitutional rights as described more fully herein.

43.     ABC entities 1-10 are current and/or former public agencies or private entities who were responsible to ensure the safety and protection of children at DCJDC, and, more specifically, to prevent the abuses described more fully herein from occurring.

44.     Defendants Meg Snead, Andrew Barnes, Jon Rubin, Teresa Miller, Theodore Dallas, Cathy Utz, Mark A. Murray,  DC, DCJDC, and ABC Entities 1-10 violated the clearly established federal Constitutional and statutory rights of Plaintiffs under the Fourth, Eighth and Fourteenth Amendments subjecting Minor-Plaintiff to harmful and degrading physical and mental abuse and

neglect, including, but not limited to, the use of excessive and unreasonable physical force, mental torture and neglect and by failing to protect her from harm and injuries at the hands of others.

45.    Defendants DC, DCJDC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa Miller, Theodore Dallas, Cathy Utz,  Mark A. Murray,  and ABC Entities 1-10 caused the injuries and harms to Minor-Plaintiff by failing to train, supervise and discipline the staff at DCJDC, including, but not limited  to, the John Doe Defendants and, as a result, staff at DCJDC, including the John Doe Defendants,  as a matter of practice and custom, engaged in the prohibited conduct on a systematic basis with the expectation that their conduct would not be subject to discipline or sanctions.

46.    Further, in addition to failing to protect Plaintiffs from physical and mental abuse and neglect by staff, Defendants DC, DCJDC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa Miller, Theodore Dallas, Cathy Utz, Mark A. Murray,  and ABC Entities 1-10 failed to protect Plaintiff from assaults and abuse by fellow residents.  In fact, fights and assaults between residents were encouraged by staff at DCJDC.

47.    Defendants DC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa Miller, Theodore Dallas, Cathy Utz, Mark A. Murray,  DCJDC, and ABC Entities 1-10 failed to properly protect Minor-Plaintiff and have shown a reckless disregard and deliberate indifference to the widespread violation of Minor-Plaintiff's constitutional rights despite knowing for decades of the conduct of the John Doe Defendants, including physical, sexual and mental abuse and neglect, and the corresponding lack of protection for Minor-Plaintiff and the children residing at DCJDC.

48.    Defendant, Child Guidance Resource Center (CGRC), is a non-profit organization in Pennsylvania with its headquarters located at 200 Old West Chester Pike, Havertown, Pennsylvania, 19083. At all relevant times hereto, Defendant CGRC provided counseling and other services to children at DCJDC. CGRC and its employees were mandated to report known or suspected child abuse under Pennsylvania law.

49.    John Does 1-20 are current and former managers, supervisors, administrators,

officials, staff, counselors and others who have been employed by or were under the control of the Defendant, Delaware County, who abused or facilitated the abuse of children at DCJDC. John Does 1-20 are sued in their individual and official capacities.

50.    John Does 21-40 are current and former managers, supervisors, administrators, officials, staff, counselors, and others who have been employed by or were under the control of the Defendants, DCJDC, who abused or facilitated the abuse of children at DCJDC. John Does 21-40 are sued in their individual and official capacities.

51.    John Does 41-60 are current and former PA-DHS secretaries, program directors, managers, inspectors, supervisors, administrators, officials, staff, counselors, the predecessors of Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, or Cathy Utz, and others, responsible for licensing DCJDC, and/or investigating reports of child abuse at DCJDC, who continued to certify/license the DCJDC for operation, despite knowledge of unlawful operating practices and/or the abuse of children at DCJDC, and/or who failed to take appropriate action upon receiving notice of the abuse of children at DCJDC. John Does 41-60 are sued in their individual capacities.

52.    John Does 61-80 are current and former managers, supervisors, administrators, officials, staff, counselors, and others who have been employed by or were under the control of the Defendant, ABC Entities 1-10, who abused or facilitated the abuse of children at DCJDC. John Does 61-80 are sued in their individual and official capacities.

53.    John Does 81-100 are current and former managers, supervisors, administrators, officials, staff, counselors, and others who have been employed by or were under the control of the Defendant, Child Guidance Resource Center, who abused or facilitated the abuse of children at DCJDC. John Does 81-100 are sued in their individual and official capacities.

54.    On March 12, 2021, DCJDC was ordered closed by President Judge Kevin F. Kelly as a result of reports of extensive child abuse taking place there, including, but not limited to, abuse described herein.

55.     Defendants violated the clearly established federal Constitutional and statutory rights of Minor-Plaintiff under the Fourth, Eighth and Fourteenth Amendments, committed tortious conduct under state law, subjecting Minor-Plaintiff to harmful and degrading physical and mental abuse and neglect, including, but not limited to, the use of excessive and unreasonable physical force, mental torture and neglect and by failing to protect her from harm and injuries at the hands of others.

56.     Because of Defendants' conduct, Minor-Plaintiff suffered and will continue to suffer from physical bodily injuries, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.

57.     Minor-Plaintiff has and will in the future sustain loss of earnings and earning capacity and has, and will, incur expenses for medical and psychological treatment, therapy and counseling. Defendants are liable for same as described more fully below.

58.     At all relevant times hereto, Defendants, DC, DCJDC, ABC Entities 1-10, and CGRC,  were acting directly as well as by and through their duly authorized actual and/or apparent agents, servants and employees, in particular, their staff, officers, guards, medical clinicians, clinical case workers, supervisors and directors acting within the course and scope of their actual and/or apparent agency and/or employment.

59.     Defendants herein are directly and vicariously liable to Plaintiffs for injuries sustained as a result of negligence, gross negligence, outrageous conduct, and reckless misconduct, as described further herein, as well as for violations of Minor-Plaintiff's constitutional rights as described further herein, by persons or entities whose conduct was under their control, or right to control which conduct directly and proximately caused all of Minor-Plaintiff's injuries.

### *Jurisdiction and Venue*

60.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 1983. At all relevant times, Defendants Meg Snead, Andrew Barnes, Jon Rubin, Teresa Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, DC,

DCJDC, ABC Entities 1-10 and John Does 1-100 acted under the color of state law.

61.     This Court also has supplemental jurisdiction over Plaintiffs' state law claims.

62.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the judicial district where this action is brought.

## DCJDC – HISTORY OF ABUSE

63.     The Delaware County Juvenile Detention Center is a juvenile detention facility, owned, operated, and staffed by Delaware County with an obligation to provide a secure setting for young children from the ages ten (10) through eighteen (18) years of age for various reasons.[10]

64.     Recently, the Public Defender's Office of Delaware County initiated and then conducted a lengthy investigation and review of the DCJDC. Current and former DCJDC residents and staff were interviewed as were various case workers who worked at DCJDC. Chief Public Defender for Delaware County Christopher Welsh, along with First Assistant Public Defender Lee Awbrey, wrote to Defendant, Teresa D. Miller, then-Secretary for DHS, expressing their "grave concerns about the health, safety and well-being of the children in custody" at DCJDC.[11]

65.     The Delaware County Public Defender's investigative findings are chilling and unconscionable. Just a few examples of their investigation include:

> o   "… through interviews with our clients and interviews with current and former DCJDC staff, our office has uncovered multiple credible allegations of physical, sexual, mental abuse perpetrated by the DCJDC staff against children held in their custody…"[12]

> o   "Youth detained at DCJDC are subjected to prolonged isolation as a form of

---

[10] https://www.delcopa.gov/courts/pdf/jd/Yearly.pdf
[11] *See* March 12, 2021 correspondence from Christopher Welsh and Lee Awbrey of the Office of the Public Defender, County of Delaware to Teresa D. Miller, Secretary of the Department of Human Services, Commonwealth of Pennsylvania, with attachments, attached hereto as Exhibit "A."
[12] Id.

      punishment, sometimes for days or weeks…."[13]

    o   "Children are denied access to mental health supports and have difficulty accessing medical care…."[14]

    o   "The facilities are dirty, in disrepair, and in some instances, disgusting.  We received reports of inadequate water access on residential units, heat that cuts out during winter, rodents, and bug infestations…." [15]

    o   In conclusion, Mr. Welsh and Mr. Awbrey stated: "We are deeply concerned for the health, safety and well being of our clients and all of the children in custody at the DCJDC…."[16]

66.     These facts are especially troubling given that DCJDC promotes itself as a secure custodial facility for its residents and between 2019 and 2020 alone, DCJDC housed a total of 782 children within its facility.[17]

### *Physical, Sexual, Verbal and Psychological Abuse by DCJDC Staff*

67.     Despite DC, DCJDC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80,  and ABC Entities 1-10's duty to provide a safe and secure setting for the children that reside within the facility, its actions have demonstrated anything but safety and security.

68.     DC, DCJDC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80, and ABC Entities 1-10's conduct has perpetuated the continued abuse of children housed at DCJDC.

69.     DC, DCJDC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80,  and ABC Entities 1-10's actions and omissions

---

[13] Id.

[14] Id.

[15] Id.

[16] Id.

[17] Id.

have displayed blatant disregard for the health and safety of the children they serve, demonstrated by the physical, sexual, and psychological abuse and neglect committed by DCJDC staff over decades.

70.     There are numerous accounts of physical and sexual abuse committed by DCJDC's staff followed by DC and DCJDC turning a blind eye to these confirmed acts.

71.     Despite the many incidents that occurred under numerous administrators, DC, DCJDC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80, and ABC Entities 1-10, outrageously and unconscionably allowed the abuse to continue and chose not to alert the public of their findings and/or danger associated with entering DCJDC.

72.     Additionally DC, DCJDC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80, or their predecessors, and ABC Entities, did not take any remedial measures whatsoever to prevent future abuse from occurring.

73.     These obvious affirmative acts and omissions led to thousands of at-risk, vulnerable minors (many from troubled backgrounds and broken homes in need of supervision and rehabilitation) being sent against their will and by court order to DCJDC away from their families and into the throes of an abusive environment.

74.     The numerous accounts of physical, sexual and psychological abuse children suffered while in DC's/DCJDC's care include, but are not limited to, the following:

    a.   DCJDC staff slapped a child's head into a metal wire mesh lined window. The force of the DCJDC's staff slapping the child caused the reinforced window to crack;

    b.   A DCJDC staff member shoved and hit a child resident;

    c.   A DCJDC supervisor violently shoved a child into a wall as the other staff watched;

    d.   DCJDC guards, unchecked by supervisors, used extreme amounts of force to restrain children;

    e.   A DCJDC child resident reported on at least two (2) occasions being placed in a

chokehold by DCJDC staff which almost caused him to lose consciousness;

f.   A non-resident reported fearing for the life of a child as they watched a DCJDC guard throw the child against a wall in a violent chokehold;

g.   Another repulsive incident involved a DCJDC guard grabbing a pregnant child resident by her shoulders and yelling in her face. After the youth fell to the floor, the DCJDC guard proceeded to carelessly "step over her in a menacing posture as she lay[ed] on the ground" and continued to scream at her. It was later reported that this DCJDC guard's intent was to cause the child to miscarry;

h.   Another child was victim to a DCJDC guard who repeatedly punched her in the face while another DCJDC guard held her down. Other DCJDC staff just watched as the child was being viciously beaten;

i.   Another horrendous incident involved the physical abuse of a child resident who suffered from a severe mental illness attempting to asphyxiate herself by swallowing clothing. After DCJDC staff was able to intervene and remove the clothing, three (3) DCJDC staff members violently forced the child resident's head into a toilet forcing her to drink from it after the child resident asked for water;

j.   DCJDC staff also refused to follow suicide protocols as they watched idly as a child had clothing wrapped tightly around her neck causing discoloration in her face and veins to protrude from her neck;

75.   DCJDC staff bragged about the brutal beatings they imposed on the children. A DCJDC staff member was observed gloating about punching a child in the face and stated the staff member "fucked her up."

76.   In addition to the heinous physical abuse the children suffered at the hands of DCJDC staff, the children also suffered from incessant and despicable verbal and emotional abuse.

77.   There are several reports of the pervasive verbal abuse and threats the children residents suffered while in DCJDC's care. A DCJDC staff member has been observed getting in the

face of a child and telling him "I'll see you on the street. I'll beat you up. I'll take care of it."

78.     While in the presence of DCJDC's former Lead Clinician, a child resident courageously reported to the DCJDC supervisors the threats he received from an overnight DCJDC staff member. The child informed the supervisor that the DCJDC staff member threatened the child with the statements he was going "fuck you up" and "fuck [his] mom." DCJDC staff have also been heard yelling out "bitch" to the children.

79.     The verbal abuse and threats made by the DCJDC staff were often racist, misogynistic or offensive to LGBTQ residents. The children were forced to hear vulgar language used by DCJDC staff including occasions when staff shouted out "Fuck you, pussy!" and "Suck my dick, bitch!" at the children.

80.     When attacking the children, DCJDC staff attacked the gender, religious, racial, linguistic, and identity status of the children. These incidents include:

   a.  Placing a Muslim child in solitary confinement for wearing a hijab    in a color the DCJDC staff did not like;

   b.  DCJDC staff refused to believe that a Spanish-speaking child could not understand English. Instead of trying to assist the child, DCJDC staff addressed the language barrier by yelling at the child in English;

   c.  Another incident of obscene use of language included DCJDC staff yelling at a child calling him the N-word.

81.     Children of the LGBTQ community have also suffered poor treatment by DCJC staff.  DCJDC's staff has degraded, shamed and humiliated the transgender children at the facility.

82.     Whenever transgender children were in the care of DCJDC, staff refused to use preferred pronouns, denied a transgender child a wig and did not permit a transgender girl to shave her facial hair.

83.     To further perpetuate their disdain for the LGBTQ community, DCJDC staff outed

17

a transgender child, did not continue her hormone treatment, and did not allow her to live on a unit consistent with her gender identity.

84.     DCJDC leaders forbid staff from attending training that taught transgender cultural competency which was offered by the state at no cost.

85.     The children also suffered sexual abuse which DC and DCJDC ignored.

86.     A child reported a male DCJDC staff coming onto her in a sexual manner but was too fearful of retaliation to disclose the staff member's name.

87.     An employee of CGRC recalled a DCJDC staff member, known as "BigRob," playing a song by R. Kelly, who currently stands charged with sexually abusing children, while chasing a child repeating "I'm gonna get you!"

88.     Despite this incident being reported to DHS' Childline, "Big Rob" remained employed at the DCJDC. The averments above are set forth in Exhibit "A".

89.     It is believed and therefore averred that DC and DCJDC were aware of the abusive patterns used in the facility and have done nothing to stop it.

90.     It is also believed and therefore averred that Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-100, CGRC and ABC Entities 1-10 either knew or should have known of the pervasive and severe abuse and neglect being committed upon children at DCJDC as described above yet did nothing to prevent it from happening.

### *Excessive, Unjustified, and Prolonged Isolation*

91.     Many of the juveniles detained at DCJDC have suffered and/or are suffering from diagnosed mental, emotional, and/or developmental disabilities.

92.     The children also came with documented histories of trauma and childhood victimization. The use of solitary confinement will only exacerbate these issues while also perpetuating the continued abuse of children within facilities such as DCJDC.[18]

---

[18] *See* Sue Burrell, *Trauma and the Environment of Care in Juvenile Institutions*, THE NATIONAL CHILD TRAUMATIC

93.     While Pennsylvania law does permit the use of seclusion under strict supervision, its use is severely limited by statute.[19]

94.     DCJDC's use of solitary confinement was not permitted under Pennsylvania law as juvenile detention facilities cannot isolate children for days at a time, use isolation as a form of punishment, nor may they use isolation as a threat to control a child's behavior.[20]

95.     The child residents at DCJDC have been subjected to unlawful prolonged isolation spanning days at a time. During these times of prolonged isolation, there have also been instances where children were arbitrarily deprived of access to mental health counselors.

96.     One incident involved a child that was forced into solitary confinement for two (2) weeks due to secondary exposure to Covid-19 despite Covid-19 safety precautions not being consistently followed as Delaware County Covid-19 guidelines do not require employees to quarantine after secondary exposure. On another occasion, a child was left in solitary confinement for several months. *See* Exhibit "A".

97.     Another instance involved a child suffering from mental illness covering herself in her own excrement while in solitary confinement. The DCJDC ensured that the child remained locked in solitary confinement for three (3) days without water or the ability to shower. *See* Exhibit "A".

98.     Despite the evidence of its harmful use, DCJDC, under the licensing and supervision of DC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, and John Does 1-80, proceeded with its continued use of solitary confinement.

99.     In fact, Defendant-Director Murray further encouraged and promoted the use of

---

STRESS NETWORK, (Aug. 2013) at 4,
https://www.nctsn.org/sites/default/files/resources/trauma_and_environment_of_care_in_juvenile_institutions.pdf
("[T]he most potentially damaging way youth can be re-traumatized is in the use of … solitary confinement.").
[19] *See* 55 Pa. Code §3800.274(17) (ii)(Under Pennsylvania law, absent an order by a licensed physician, physician assistant or registered nurse, no child shall be subjected to solitary confinement for more than four (4) hours. There must be a re-examination and new order for every additional four (4) hours.)
[20] Id.

solitary confinement by his DCJDC staff as a form of punishment against the children.

100.    During a January 7, 2021 hearing, DCJDC Defendant Director Murray openly admitted to the use of solitary confinement against the children.

101.    Murry testified that the use of solitary confinement was derived from situational events. The "situational" event Murray testified to was in reference to the immediate use of solitary confinement against a child as a form of punishment after the child stated to the guard that she would slap them.

102.    The use of solitary confinement against the child was in violation of Pennsylvania regulations.[21]

103.    From this encounter, DCJDC went through great lengths to obtain a court order to extend the child's solitary confinement from an already long four (4) to eight (8) hour confinement to a full forty-eight (48) hours.

104.    It is believed and therefore averred that all Defendants, DC, DCJDC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-100, ABC Entities, and CGRC, were aware of the improper use of solitary confinement of children at DCJDC and refused to report or stop the improper practice despite it being clear child abuse.

### *Unacceptable Medical Care, Mental Health Care, Education and Facilities*

105.    It was and is the duty of DC, DCJDC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80, and ABC Entities 1-10, to provide the necessary mental health care, medical care, adequate education and facilities to the youth that are under its care.

106.    Often, children at DCJDC were denied access to mental health support and/or have difficulty accessing medical care.

107.    Knowing the need to have such access to mental health supporters, DCJDC

---

[21] *See* 55 Ps. Code § 3800.202; *see also* 55 Pa. Code §§ 3800.212 (c)(3), 3800.274(17)(ii).

developed deceptive means to prevent children from having access to counselors.

108.    A DCJDC employee described that "[s]ome DCJDC staff who placed these children on unit restriction deliberately withhold mental health services during the unit restriction period. To access these children and provide necessary treatment, I had to learn which DCJDC staff members were most likely to give me permission."  *See* Exhibit "A".

109.    Children were also arbitrarily denied access to mental health counselors. Oftentimes, the denial of access to mental health counselors was retaliatory.

110.    Additionally, children's healthcare was often ignored and disregarded. A child suffering from discomfort was turned away because the medical staff refused to believe her symptoms. It was subsequently determined that the child was suffering from a sexually transmitted disease. This neglect resulted in a two (2) week delay in providing the child necessary treatment. *See* Exhibit "A".

111.    DC and DCJDC had no interest in furthering the education of the children evidenced by its poor curriculum. The education provided to children was "one size fits all" in which children would receive only two (2) hours of schooling and worksheets that were not tailored to their education level. *See* Exhibit "A".

112.    In addition to the poor education, the children suffered from severely poor living conditions.

113.    The facility was in deplorable condition as it was covered in filth and disgust. Partsof the facility were often covered in mouse droppings and infested with bugs. Some rooms were left unclean for weeks or months at a time. *See* Exhibit "A".

114.    Children at DCJDC suffered through numerous winters without heat, some occasions lasting as long as a week. When CGRC staff questioned DCJDC regarding the heat, DCJDC stated there was nothing that could be done. A Childline complaint was filed about the freezing temperatures and the heat was restored later that day. *See* Exhibit "A".

115.    There were instances when it was so cold in the DCJDC facility that children reported

seeing their breath. During these winter months DCJDC staff were protected with coats,hats and scarves while the children suffered as they were not given any winter clothing. *See* Exhibit "A".

116.    Under the National Food Program, the child residents are eligible to receive free breakfast and lunch. Despite this eligibility, the food was inadequate as it was often inedible and as a result the children were often left hungry. DCJDC staff also refused to accommodate childrenwho are vegetarian.[22]

117.    The DCJDC kitchen staff also failed to comply with sanitary guidelines.

### *DCJDC's Culture of Secrecy*

118.    The environment of DCJDC has fostered a culture of secrecy among the Defendants and Defendant-agencies involved in its operation and management, by instilling fear and by creating the ever-present threat of retaliation by the DCJDC staff if children were to disclose the abuse they suffered.

119.    Further, by structuring the channels of oversight and management in direct violation of Pennsylvania law, the Defendants sought to minimize scrutiny and liability for their grossly inadequate management of the DCJDC.

120.    Children would often beg the Mental Health Clinician to refrain from reporting abuse to authorities as they feared the disclosure would only result in relation from the DCJDC staff and make matters worse for them.  *See* Exhibit "A".

121.    Despite there being video cameras on the premises, DCJDC staff were well aware of the blind spots where there was no camera coverage. It is in these areas where the previously outlined instances of physical abuse largely occurred. It was also in these areas where children were most vulnerable and put in danger. *See* Exhibit "A".

122.    The deliberate, strategic, and premeditated actions of the DCJDC staff to ensure that their abusive actions would not be recorded on camera truly exemplifies the scope and scale of the

---

[22] *See* https://www.delcopa.gov/courts/juveniledetention.html

abuses occurring within this facility (and other juvenile detention centers alike).

123.   In addition to purposely hiding their abusive acts, DCJDC staff have also altered reports to try and corroborate their false accounts when an incident involving force was reported.

124.   To further ensure the secret and abusive culture, children have been deterred from telling the truth by being told no one would believe them. *See* Exhibit "A".

125.   In the above-mentioned incident where a child courageously reported a threat by an overnight DCJDC staff member to the DCJDC supervisor, the supervisor responded, "Do you really think a judge is going to believe a bunch of juvenile delinquents over a corrections officer?" *See* Exhibit "A".

126.   When Childline reports were made, some DCJDC staff asked for a "heads up" before the report is made. *See* Exhibit "A".

127.   DCJDC staff would retaliate against those who made Childline reports by giving them the silent treatment, denying them access to mental health services, and responding with other spiteful behaviors. *See* Exhibit "A".

128.   DCJDC leadership encouraged the secrecy of the horrid physical, sexual, and psychological abuse the children suffered by coaching certain children on how to interact with investigators. DCJDC leaders would bribe children, who were often starved,  with candy to skew the investigation to furtherhide the abuse the children suffered. *See* Exhibit "A".

129.   Despite the presence of cameras within the facility to capture the abuse the children suffered, these videos were often hidden from investigators and on other instances flat out ignored. *See* Exhibit "A".

130.   DC and DCJDC were aware of the conduct of staff and other employees to hide the physical abuse  the children suffered. DCJDC encouraged the concealment of the abuse the children suffered and has done nothing to end the secrecy culture or protect the children.

### *CGRC's Role in the Abuse at DCJDC*

131.    CGRG is a nonprofit organization and the largest provider of children's mental health services in the greater Philadelphia region.[23]

132.    Among its various services, CGRC also employs mental health staff that provide mental health services to juvenile detention centers such as DCJDC.

133.    The CGRC provided services at the DCJDC through its contract with Defendant, Delaware County.

134.    As clinical professionals, CGRC staff had a duty to report abuse children suffered at the hands of DCJDC and its staff but instead was instructed to turn a blind eye and in fact did so.

135.    The CGRC encouraged the abuse the children suffered by instructing the CGRC staff to give DCJDC staff "a heads up" when filing a Childline complaint which allowed DCJDCstaff time to prepare an explanation and fabricate their accounts.  *See* Exhibit "A".

136.    Despite CGRC's alleged support of the closing of DCJDC and the investigation now underway, CGRC did nothing to stop the abuse the children suffered. Instead CGRC's affirmative actions and omissions furthered the abuse and DCJDC's attempts to keep it hidden.[24]

137.    Due to pressure by CGRC leadership, CGRC psychiatrists fabricated reports that were used in court to ensure Delaware County Juvenile Probation's desired results. CGRC staff was repeatedly told not to "rock the boat" and were warned against working with the Public Defender's Office regarding the abuse of the children.

138.    CGRC, its leadership, and its staff were more concerned with their own bottom line and reputation instead of the health and safety of the children as CGRC staff was encouraged to refrain from exposing the abuse that occurred to prevent antagonizing the Delaware County Juvenile Probation as that would cost CRGC its "lucrative contract" with Defendant, Delaware County.

---

[23] *See* https://www.cgrc.org/
[24] *See* Liia Richmond, *Statement Regarding Lima Detention Center*, (Mar. 14, 2021), https://cgrc.org/blog/statement-re-lima-detention-center/

139.    CGRC was aware of the abuse that occurred and had a duty to report abuse  but chose not to do so in many instances.

### PA-DHS Failed to Ensure the Safety of Children at DCJDC

140.    PA-DHS has a duty to ensure the health, safety, and well-being of children in the child welfare and juvenile justice systems.

141.    The juvenile justice system in Pennsylvania and throughout the United States was founded on the recognition that youth who commit delinquent acts are fundamentally different from adults who commit crimes. Youth are less culpable, more vulnerable, and more susceptible to treatment and rehabilitation. The juvenile justice system is therefore designed to provide for the care, supervision and rehabilitation of youth committing delinquent acts. *See, e.g.*, *In re MD.*, 839 A.2d 1116, 1120 (Pa. Super. Ct. 2003).

142.    The Pennsylvania Juvenile Act thus aims "[t]o provide for the care, protection, safety and wholesome mental and physical development of children coming within the provisions of [the Act]." 42 Pa. Cons. Stat. Ann. § 6301(b)(1.1). The Act endeavors to achieve its purposes "in a family environment whenever possible, separating the child from parents only when necessary for his welfare, safety or health or in the interests of public safety." *Id*. at 6301(b)(3). For youth adjudicated delinquent, the Act is designed to provide "... programs of supervision, care and rehabilitation..." that facilitate "...the development of competencies to enable children to become responsible and productive members of the community." *Id*. at 6301(b)(2). Courts in Pennsylvania have recognized that, while principles and policies underlying the juvenile justice system may have evolved since its creation, "particular importance is still placed upon rehabilitating and protecting society's youth." *In re J.F.*, 714 A.2d 467, 471 (Pa. Super. Ct. 1998); 42 Pa. Cons. Stat. Ann. § 6301(b)(3).

143.    In Pennsylvania, PA-DHS plays a significant role in the protection, rehabilitation, and treatment of young people in the juvenile justice system by licensing child residential facilities.

144.    Pennsylvania courts may only commit children to such child residential facilities that

are approved by PA-DHS. *See* 42 Pa. Cons. Stat. Ann. § 6352(a)(3).[25] PA-DHS approves facilities through a licensing process that is supposed to ensure they meet the minimum standards that are set forth in Chapter 3800 of the Pennsylvania Administrative Code. Each facility must be individually inspected at least once per year, and PA-DHS issues a certificate for compliance for each physical structure within a facility that qualifies for a certificate. 55 Pa. Code § 3800.4. PA-DHS's issuance of the certificate of compliance to a facility indicates that the facility follows all applicable statutes, ordinances, and regulations. 55 Pa. Code § 20.53. PA-DHS has the authority to conduct additional announced and unannounced inspections including inspections in response to complaints. 55 Pa. Code § 20.33. If during inspections, PA-DHS finds evidence of "gross incompetence, negligence, misconduct in operating the facility or agency, or mistreatment or abuse of clients, likely to constitute an immediate and serious danger to the life or health of the clients," PA-DHS must take immediate action to remove the clients from the facility. 55 Pa. Code § 20.37.

145.    For other concerns regarding noncompliance with licensure or approval regulations, facilities must submit a written plan to correct the noncompliance items along with a period of time to correct the items. 55 Pa. Code § 20.52. PA-DHS may also deny, refuse to renew, or revoke a certificate of compliance for failure to comply with applicable regulations, failure to submit or comply with an acceptable plan to correct noncompliance of items, mistreatment or abuse of clients, gross incompetence, negligence or misconduct in operating the facility, and fraud and deceit in regards to obtaining or using their certificate of compliance. 55 Pa. Code § 20.71(a).

146.    The minimum licensing requirements in Chapter 3800 of the Pennsylvania Administrative Code set forth numerous rights that young people in child residential facilities have. Children in facilities have the right to "rehabilitation and treatment." 55 Pa. Code § 3800.32(l).

_____

[25] The statute refers to the Department of Public Welfare, which has been redesignated as PA-DHS. *See* 62 P.S. § 103; 62 Pa. Cons. Stat. Ann. § 103 n.2.

Children must be treated with "fairness, dignity and respect." 55 Pa. Code § 3800.32(c). They have the right to "appropriate medical, behavioral health and dental treatment." 55 Pa. Code § 3800.32(k). They have a right not to be "abused, mistreated, threatened, harassed or subject to corporal punishment," or subject to "unusual or extreme methods of discipline which may cause psychological or physical harm to the child. 55 Pa. Code § 3800.32(b), (n). Even in instances when physical "restraints" against children are permitted, Chapter 3800 articulates clear guidelines over when and how such restraints may be employed, and the training requirements for staff authorized to restrain young people. *See* 55 Pa. Code §§ 3800.202-205, 211-211a. Any suspected child abuse must be immediately reported, and allegations of child abuse involving facility staff requires the facility to submit and implement a supervision plan. 55 Pa. Code § 3800.15. Upon admission to a child residential facility, children and their parents must be informed of the child's rights, and their right to lodge grievances without fear of retaliation. 55 Pa. Code § 3800.31. Facilities may not deprive children of specific or civil rights or use their rights as an award or sanction. 55 Pa. Code § 3800.33.

147.    For years, Defendants Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, and John Does 40-60, knew or should have known about the routine violence against youth at DCJDC yet failed to take any meaningful action to curtail it and protect youth placed there. Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, and John Does 40-60, continued to license DCJDC despite its noncompliance with numerous 3800 regulations.

### S.B., A Minor, Suffered Horrible Abuse at DCJDC

148.    S.B. was a resident at the Delaware County Juvenile Center on four (4) separate occasions between June 2020 and February 2021.  S.B.was only sixteen (16) years old when she was a resident of DCJDC and the abuses identified herein occurred.

### *Physical Abuse*

149.    S.B. was physically abused throughout all of her stays at DCJDC.

150.    On one occasion, S.B. was held down and punched in the face.  She sustained a black eye and bruised lip.  She was then locked in her room for 24 hours with no medical attention.

151.    On another occasion, S.B. was punched in her side by a DCJDC guard.  She complained of pain and was eventually taken to the hospital where she was diagnosed with a urinary tract infection.

152.    In another instance, the same DCJDC guard stepped hard on S.B.'s ankle causing her severe pain and problems walking for some time.

153.    On one occasion when S.B. was having an asthma attack, the DCJDC guards took her inhaler causing her to gasp for breath.

154.    S.B. was often restrained unnecessarily and forcibly.  The guards would restrain her by tightly securing her arms behind her back.

155.    S.B.'s face was often pushed into walls for no reason at all.

156.    On one occasion, a DCJDC guard chased her around a table and continued to do so despite S.B. asking him to stop.  This was very frightening for S.B. as it appeared he was making sexual advances.

### *Psychological Abuse*

157.    Due to the ongoing physical abuse and S.B.'s underlying medical conditions, S.B. required medical attention and mental health treatment but it was not provided to her.

158.    On one occasion, S.B. tried flooding her room to obtain the medical attention she desperately needed but it was not provided to her.  Instead, the guards simply turned off the water to her room.

159.    On another occasion, S.B. was felt to be a suicide risk but instead of having her seen by medical professionals, the DJCDC staff took her clothes and left her naked and locked in her room for two days.

160.    S.B., only a sixteen-year-old girl, was also told by DJCDC staff that "she might as

well drop out of school because she will end up as a crack head".

161.    S.B. was also repeatedly called a whore by DJCDC staff.

162.    S.B. was also subjected to stories by the DJCDC staff of their sex lives and sexual experiences.

163.    S.B. was also constantly screamed and yelled at which only further psychologically and mentally damaged her.


### *Abusive Living Conditions*

164.    The living conditions at DJCDC were atrocious.  S.B. was forced to live in squalor, including, but not limited to, the following:

   a.   There was no heat in the winter and no coats or warm weather gear was provided. S.B. only had one blanket.

   b.   Roaches and insects were everywhere.

   c.   Mice were a constant presence in S.B.'s room and the entire facility.

   d.   The food was inedible and/or sometimes no food was provided.

### DC, *DJCDC, Ms. Snead, Mr. Barnes, Mr. Rubin, Ms. Miller, Mr. Dallas, Ms. Utz, Mr. Murray and CGRC DID NOTHING*

165.    S.B. would complain to staff, but nothing was ever done and the abuse continued.

166.    When S.B. was allowed in the infirmary, she would call her Mom, C.B., who would call Delaware County representatives to complain but nothing was done and the abuse continued.

167.    The abuse of minors, including S.B., taking place at DCJDC was known    to Defendants DC, DCJDC, Meg Snead, Andrew Barnes, Jon Rubin, Mark A. Murray, and CGRC.

168.    As a direct and proximate result of the physical, verbal and psychological abuse and neglect committed by all Defendants, S.B. suffered physical and emotional injuries, as more fully set forth in this Complaint. As a result of the abuse at DCJDC, S.B. has been severely mentally, psychologically, and emotionally damaged.

169.     S.B. has suffered and continues to suffer great pain and suffering as a result of the abuse she suffered while a resident of DCJDC, including, but not limited to, physical pain, emotional distress, physical manifestations of emotional distress including stomach pains, headaches, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life. The significant physical, emotional and psychological injuries sustained by S.B. are real, significant and ongoing.

170.     S.B. continues to suffer from stress and anxiety as a result of her time at DCJDC.

171.     All of the above physical, psychological, and emotional injuries were proximately caused by the negligence, carelessness, recklessness, deliberate indifference, constitutional rights violations and other tortious and outrageous acts or omissions of Defendants as set forth in this Complaint.

### *State Law Claims*

### <u>COUNT I -NEGLIGENCE</u>
### <u>Plaintiffs v. Defendants CRGC, John Does 60-100 and ABC Entities 1-10</u>

172.     Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint as if fully set forth herein:

173.     At all relevant times, Defendants CGRC, John Does 60-100 and/or ABC Entities 1-10, owed a duty to ensure that minors were not being physically, verbally and/or psychologically abused by staff at DCJDC and a duty to report any known or suspected child abuse.

174.     At all relevant times, Defendants CGRC, John Does 60-100 and/or ABC Entities 1-10 owed a duty not to help cover up child abuse at DCJDC.

175.     At all relevant times, Defendants CGRC, John Does 60-100 and/or ABC Entities 1-10 owed a duty to protect and safeguard Minor-Plaintiff from hurt, harm and danger while she was under their care and supervision at DCJDC.

176.     At all relevant times, Defendants had a duty to ensure that the abuse being committed by DCJDC employees was reported.

177.    At all relevant times, Defendants had a duty to provide for the safety of Minor-Plaintiff when it knew, or should have known, that she was subjected to continuous and regular abuse.

178.    At all relevant times, Defendants knew or should have known that agents, employees, servants and/or staff members of DCJDC were physically, verbally and psychologically abusing Minor-Plaintiff as well as other minors at DCJDC and/or posed a risk to Minor-Plaintiff.

179.    Defendants knew, had reason to know, or were otherwise on notice of the unlawful conduct of DCJDC and its own staff who failed to protect the safety of children in DCJDC, including Minor-Plaintiff. Defendants failed and further prevented its staff in taking reasonable steps to implement reasonable safeguards to prevent acts of unlawful abuse by the staff at DCJDC. Defendants, CGRC, John Does 60-100 and/or ABC Entities 1-10 failed to prevent or avoid placement of Minor-Plaintiff in functions or environments in which she would be endangered and abused.

180.    By failing to act and remain silent given the known, or reasonably knowable, activities of DCJDC staff, Defendants allowed for physical violence, mental torment, and the violation of the sanctity of children, including Minor-Plaintiff, to be condoned, approved, and effectively authorized.

181.    Defendants CGRC, John Does 60-100 and/or ABC Entities 1-10 allowed, condoned and authorized the abuse of minors by telling its staff members not to report the abuse happening at DCJDC. Defendants further aided in the cover up of the abuse of minors occurring at the detention center so that it may keep its "lucrative contract" with Defendant, Delaware County.

182.    Through their failure to timely reprimand and speak out against the acts referenced above, and for all of the other reasons set forth herein including, without limitation, their failure to take the steps necessary to prevent the occurrence of such reprehensible acts, Defendants ratified said actions and, accordingly, are vicariously liable for the actions of their entities and individual employees.

183.    At all relevant times, Defendants, CRGC, John Does 60 – 100 and ABC Entities 1-10 failed to adequately and properly:

    a.  employ processes that require its employees to report, screen out and/or prevent the abuse of children by staff;

    b.  supervise their agents, employees, servants, staff members, and/or the agents, employees, servants, staff members, and/or agents under their supervision; and

    c.  train their agents, employees, servants and/or staff members.

184.    The negligent, reckless, intentional, outrageous, deliberately and recklessly indifferent and unlawful acts and omissions of Defendants, CRGC, John Does 60 – 100 and ABC Entities 1-10, as set forth above and herein, consisted of, *inter alia*:

    a.  permitting staff to physically abuse Minor-Plaintiff;

    b.  permitting and/or allowing an environment in which staff violated or engaged in conduct that would constitute violations of Pennsylvania criminal statutes prohibiting Endangering the Welfare of a Child (18 Pa. C.S.A. § 4304) constituting negligence per se;

    c.  failing to properly and adequately supervise and discipline its employees to prevent the physical, verbal and psychological abuse that occurred to Minor-Plaintiff;

    d.  failing to adopt, enforce and/or follow adequate policies and procedures for the protection and reasonable supervision of children who were under the care and supervision of Defendant, DJCDC, including Minor-Plaintiff, and/or failing to implement and comply with such procedures which had been adopted;

    e.  failing to implement, enforce and/or follow adequate protective and supervisory measures for the protection of minors under Defendants'

care/treatment at DCJDC;

f.    allowing children to be placed in isolation;

g.    creating an environment that facilitated physical, verbal and psychological abuse by DCJDC staff;

h.    failing to adopt, enforce and/or follow policies and procedures to protect minors against harmful influence and contact by DCJDC guards and staff;

i.    ratifying the staff and guards conduct;

j.    failing to adopt/implement and/or enforce policies and procedures for the reporting to law enforcement, Office of Children and Youth, authorities within Defendants' ability, and/or other authorities of harmful acts to children;

k.    failing to report staff and guards' harmful acts to authorities;

l.    violating the requirements of Pennsylvania's Child Protective Services Law, 23 § 6311(a) and (b), constituting negligence per se;

m.    ignoring, concealing, or otherwise mitigating the seriousness of the known danger that DCJDC and its staff posed; and

n.    failing to properly supervise, discipline and/or train its employees.

185.    As a proximate and direct result of Defendants', CRGC, John Does 60 – 100 and ABC Entities 1-10, negligence and/or reckless conduct described herein, Minor-Plaintiff sustained physical and emotional injuries, embarrassment, mental anguish, pain and suffering and loss of enjoyment of life and life's pleasures.

186.    Minor-Plaintiff, S.B., will likely be caused to incur medical expenses and may likely incur a loss of earning capacity in the future.

187.    Defendant CGRC, a youth counseling service, John Does 60-100 and/or ABC Entities 1-10, knew or should have known about the severe risk of their failure to take any

appropriate precautions outlined above and acted with a reckless disregard for such risk, for which Minor-Plaintiff is entitled to and hereby seeks punitive damages pursuant to Pennsylvania law.

188.    Defendants', CRGC, John Does 60 – 100 and ABC Entities 1-10, actions and failures as described herein are outrageous and were done recklessly with a conscious disregard of the risk of harm to Minor-Plaintiff for which Minor-Plaintiff is entitled to and hereby seeks punitive damages.

### COUNT II – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### Plaintiffs v. CRGC, John Does 60-100 and ABC Entities 1-10

189.    Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

190.    Defendants, CRGC, John Does 60 – 100 and ABC Entities 1-10,  by  and  through their  contact  with Minor-Plaintiff as  described  above, negligently and/or recklessly committed multiple acts of extreme and outrageous conduct which caused severe emotional, psychological, and psychiatric injuries, distress, and harm to Minor-Plaintiff, which also manifested in physical injuries to Minor-Plaintiff as set forth above in an extreme, outrageous and harmful manner.

### COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Plaintiffs v. CRGC, John Does 60-100 and ABC Entities 1-10

191.    Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

192.    Defendants, CRGC, John Does 60 – 100 and ABC Entities 1-10, by and through their contact with Minor-Plaintiff, as described above, intentionally committed multiple acts of extreme and outrageous conduct which caused severe emotional, psychological, and psychiatric injuries, distress, and harm to Minor-Plaintiff, which also manifested in physical injuries to Minor-Plaintiff as set forth above, in an extreme, outrageous and harmful manner.

### COUNT IV - NEGLIGENT FAILURE TO RESCUE
### Plaintiffs v. CRGC, John Does 60-100 and ABC Entities 1-10

193.    Plaintiffs   incorporate   herein   by   reference   the   preceding   paragraphs   of   this

Complaint if fully set forth herein.

194.    The negligence and recklessness of Defendants in directly and proximately causing the injuries and damages to Minor-Plaintiff, described herein, includes:

   a. failing to take reasonable and necessary steps to rescue Minor-Plaintiff after placing her in a position of harm;

   b. failing to exercise reasonable and necessary steps to prevent further harm when knowing that Minor-Plaintiff was in danger;

   c. failing to take reasonable and necessary steps to give aid or assistance to Minor-Plaintiff to prevent further harm;

   d. failing to take reasonable and necessary steps to prevent the delay in the appropriate care of Minor-Plaintiff; and

   e. violation of the duties set forth in Restatement (Second) of Torts, Sections 314A & 322, as adopted in Pennsylvania.

195.    As a proximate and direct result of Defendants', CRGC, John Does 60 – 100 and ABC Entities 1-10, breaches described in the preceding paragraph, Minor-Plaintiff sustained psychological and physical harms and injuries as described above.

196.    The aforementioned incidents resulted from the negligence, recklessness and/or intentional acts of Defendants, CRGC, John Does 60 – 100 and ABC Entities 1-10, and was due in no manner whatsoever to any act or failure to act on the part of Plaintiffs.

## COUNT V - FAILURE TO WARN
### Plaintiffs v. Defendants CRGC, John Does 60-100 and ABC Entities 1-10

197.    Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

198.    At all times material hereto, Defendants, CRGC, John Does 60 – 100 and ABC Entities 1-10, who were contracted by DC to provide mental health services to the children housed at DCJDC, owed a duty to Minor-Plaintiff and the public to warn about DCJDC and its staff when they knew, or should have known, that the staff and facility  posed a risk to all persons and in

particular to minors being detained in their juvenile detention center.

199.    Defendants, CRGC, John Does 60 – 100 and ABC Entities 1-10, breached their duty to warn that DCJDC staff members, specifically the guards, posed a risk of harm. Defendants failed to exercise the reasonable care, skill, and diligence of an ordinarily prudent mental health service/care agency would, in warning minors and the public of the risks and dangers that were occurring at the Delaware County Juvenile Detention Center.

200.    No negligence on the part of the Plaintiffs contributed to the happening of the occurrence.

201.    Minor-Plaintiff's injuries and damages as recited herein, occurred directly and were proximately caused by Defendants', CRGC, John Does 60 – 100 and ABC Entities 1-10,  breach of duty to warn as described herein.

202.    As a direct and proximate result of Defendants', CRGC, John Does 60 – 100 and ABC Entities 1-10, failure to warn the public and Plaintiffs about DCJDC and its staff, Minor-Plaintiff suffered serious injury, has required medical care  and attention; has suffered mental anguish, severe pain and agony as a result of the happening of her time at DCJDC; and was otherwise injured and damaged, for which claim is made.

### COUNT VI -NEGLIGENCE *PER SE*
### Plaintiffs v. CRGC, John Does 60-100 and ABC Entities 1-10

203.    Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

204.    Defendants, CRGC, John Does 60 – 100 and ABC Entities 1-10, knew, had knowledge or had reasonable suspicion of the unlawful structure of management and oversight of the DCJDC, in violation of 16 P.S. §§5537 and 5538.

205.    Defendants, CRGC, John Does 60 – 100 and ABC Entities 1-10, knew, had knowledge or had reasonable suspicion of harmful acts being  committed on minors by staff at DCJDC and negligently, recklessly and/or intentionally violated their statutory duty to report such

abuse as required by Pennsylvania's Child Protective Services Law (PCPSL), 23 § 6311(a) and (b) et seq.

206.    Defendants, CRGC, John Does 60 – 100 and ABC Entities 1-10, knew, had knowledge or had reasonable suspicion of harmful acts and/or other misconduct being committed by guards on children and/or other minors, including Minor-Plaintiff, and negligently, recklessly and/or intentionally violated their statutory due to protect such children as required under Pennsylvania law - Endangering the    Welfare of a Child (18 Pa. C.S.A. § 4304).

207.    Defendants knew, CRGC, John Does 60 – 100 and ABC Entities 1-10, had knowledge or had reasonable suspicion of harmful acts and/or other misconduct being committed by guards on children and/or other minors and negligently, recklessly and/or intentionally violated their statutory duty to report such abuse and ensure the well-being of these children.

208.    Defendants', CRGC, John Does 60 – 100 and ABC Entities 1-10, violations constitute negligence per se under Pennsylvania law.

209.    Defendants', CRGC, John Does 60 – 100 and ABC Entities 1-10, negligent, reckless and/or intentional failure to report such harmful acts allowed DCJDC staff to abuse Minor-Plaintiff, causing continuing harm to Minor-Plaintiff and the injuries and damages described above

210.    Such failure on the part of Defendants, CRGC, John Does 60 – 100 and ABC Entities 1-10, was reckless, intentional, knowing, grossly  negligent, deliberately and recklessly indifferent, outrageous, malicious and/or was a reckless and conscious disregard for the safety of Plaintiffs.

### *Federal Claims*

### COUNT VII – 42 U.S.C. § 1983
### Plaintiffs v. DC, DCJDC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80,  , and ABC Entities 1-10 Civil Rights Conspiracy

211.    Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

212.    The Defendants, acting within the scope of their employment and  under color of state

law, agreed among themselves and with other individuals to act in concert in order to deprive Minor-Plaintiff, and many others similarly situated, of her clearly established Fourth, Fifth, Eighth, and Fourteenth Amendment rights to be free from unreasonable searches and seizures, false arrest, false imprisonment, malicious prosecution, deprivation of liberty without due process of law, self-incrimination and to a fair trial.

213.    In furtherance of the conspiracy, Defendants engaged in and facilitated numerous overt acts, including, without limitation, the following:

a.  Delegating the non-delegable duty to maintain and manage the County's juvenile detention center;

b.  Circumventing the oversight structure, contemplated and codified by the Pennsylvania legislature, and assigning the duty to manage and maintain the juvenile detention facility – all in violation of Pennsylvania law.

c.  Intentionally or with deliberate indifference failing to comply with their duty to keep juvenile residents of the DCJDC safe from harm;

214.    The acts and omissions by the Defendants, DC, DCJDC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80, and ABC Entities, 1-10, were made in a willful disregard for the safety of Minor-Plaintiff and a reckless or callous indifference for her protected rights.

215.    Defendants' acts and omissions, as described above, were the direct and proximate cause of Minor-Plaintiffs' injuries. Defendants knew, or should have known, that their actions and/or inactions would result in Minor-Plaintiffs' grave physical, emotional, psychological and other harm.

**COUNT VIII - 42 U.S.C. § 1983**
**Plaintiffs v. DC, DCJDC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa**
**D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80, and**
**ABC Entities 1-10**
**Excessive and Unreasonable Force in Violation of the Fourth, Eighth and**
**Fourteenth Amendments**

216.     Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

217.     The Fourth, Eighth and Fourteenth Amendments to the United States Constitution protect Minor-Plaintiff from physical abuse and unreasonable or excessive force from DC and DCJDC. These amendments also required Defendants, including Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80,  and ABC Entities 1-10, to establish policies and practices to protect Minor-Plaintiff from known harms and known patterns of constitutional deprivations.

218.     Defendants failed, with deliberate indifference, to provide a safe custodial setting for Minor-Plaintiff, by failing to properly train, supervise and discipline staff at the DCJDC, including the John Doe Defendants, failing to properly investigate claims of child abuse related to residents at DCJDC, and failing to appoint the proper individuals to a board of advisors for management, of the juvenile detention center as required by state law. As a proximate result of Defendants' policies, practices and customs, the staff at DCJDC, including the John Doe Defendants, acting under color of state law, subjected Minor-Plaintiff to excessive and unreasonable force, a failure to protect from harm, and other abuses alleged in this Complaint. Defendants, DC, DCJDC and its staff and Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80,  and ABC Entities, violated Minor-Plaintiff's Fourth,  Eighth and Fourteenth Amendment rights when they physically, verbally, and psychologically abused her, and/or endorsed the abusive environment, and/or took no action to prevent such abuse despite their knowledge of prior, reported instances of abuse and the abusive environment festering at DCJDC.

219.     The force used in each of these instances was objectively unreasonable, malicious, sadistic, intended to cause harm, and without any legitimate penological purpose.

220.     Defendants acted or failed to act under the color of state law, when they were required to keep minors, including minor-Plaintiff, safe from harm.

221.    Defendants' acts and omissions as set forth in the preceding paragraphs of this Complaint shock the conscience, deprived Minor-Plaintiff of her Fourth, Eighth and Fourteenth Amendment right to be protected from physical, mental and psychological abuse and neglect and unreasonable or excessive force, and caused Minor-Plaintiff grave physical, emotional, psychological and other harm.

222.    The acts and omissions by the Defendants, DC, DCJDC, and Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80,  and ABC Entities 1-10 were made in a willful disregard for the safety of Minor-Plaintiff and a reckless or callous indifference for her protected rights.

223.    The acts and omissions by the Defendants, DC, DCJDC, and Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80,  and ABC Entities 1-10 as described in the preceding paragraphs of this Complaint, were the direct and proximate cause of Minor-Plaintiff's damages and injuries and are therefore liable to Plaintiffs under 42 U.S.C. § 1983 and the Fourth, Eighth and Fourteenth Amendments.

**COUNT IX: 42 U.S.C. §1983**
**Plaintiffs v. DC, DCJDC,  Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller,**
**Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80,  and ABC Entities 1-10**
**Failure to Intervene**

224.    Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

225.    By their conduct and under color of state law, Defendants, DC, DCJDC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80,  and ABC Entities 1-10, had knowledge of the child abuse at DCJDC and had opportunities and responsibilities to intervene and stop the abuse that was occurring to Minor-Plaintiff at DCJDC to prevent the violation of her clearly established constitutional right to be free from unreasonable and excessive force and cruel and unusual punishment but, with deliberate indifference, failed to do so.

226.    Defendants', DC, DCJDC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa D.

Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80, and ABC Entities 1-10, failures to intervene violated Minor-Plaintiff's clearly established constitutional right to be free from unreasonable and excessive force and cruel and unusual punishment as guaranteed under the Eighth and Fourteenth Amendments.

227.   The failures of Defendants, DC, DCJDC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80,  and ABC Entities 1-10, were made in a willful disregard for the safety of Minor-Plaintiff and a reckless or callous indifference for her protected rights.

228.   Defendants', DC, DCJDC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80,  and ABC Entities 1-10, acts and omissions, as described in the preceding paragraphs of this Complaint, were the direct and proximate cause of Minor-Plaintiff's damages and injuries and are therefore liable to her under 42 U.S.C. § 1983.

**COUNT X: 42 U.S.C. §1983**
**Plaintiffs v. DC, DCJDC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller,**
**Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80,  ABC Entities 1-10**
**Deprivation of Rights by Virtue of State Created Danger**

229.   Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

230.   As set forth herein, this is a civil rights action brought pursuant to 42 U.S.C. § 1983 that challenges the constitutionality of the actions by Defendants, DC, DCJDC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80,  and ABC Entities 1-10, that resulted in severe injuries to Minor-Plaintiff.

231.   At all times relevant hereto, Defendants, DC, DCJDC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80,  and ABC Entities 1-10, were all "persons" pursuant to 42 U.S.C. §1983 as all were providing care, custody and/or control over Minor-Plaintiff.

232.   The specific harms to which Defendants, DC, DCJDC, Meg Snead, Andrew Barnes,

Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80, and ABC Entities 1-10, exposed Minor-Plaintiff were foreseeable and direct in that they knew that allowing continuous and regular abuse to occur to Minor-Plaintiff and other children at DCJDC would result in severe and lasting harm to Minor-Plaintiff.

233.   At all times material hereto, Defendants, DC, DCJDC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80, and ABC Entities 1-10, were bound, as previously set forth herein, by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution as well, upon information and belief, their own policies, rules and regulations for the management, care and oversight of children placed in juvenile detention facilities in Pennsylvania, and, specifically the DCJDC.

234.   In direct contravention and violation of the Fourth, Eighth and Fourteenth Amendments as set forth above and, upon information and belief, in violation of their own policies and regulations, Defendants, DC, DCJDC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80, and ABC Entities 1-10, recklessly, willfully and with deliberate indifference, physically, verbally and psychologically abused Minor-Plaintiff.

235.   At all times relevant hereto, Defendants, DC, DCJDC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80, and ABC Entities 1-10, were acting under "color of state law" for purposes of 42 U.S.C. § 1983 by placing Minor-Plaintiff in the Delaware County Juvenile Detention Center.

236.   Defendants, DC, DCJDC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80, and ABC Entities 1-10, while acting under color of state law, unlawfully, and/or unreasonably, willfully, recklessly, maliciously and/or with deliberate indifference to Minor-Plaintiff's rights, violated 42 U.S.C. §1983 and deprived Minor-Plaintiff of her rights as guaranteed under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, similar provisions of the Pennsylvania Constitution,

Federal Law, State Law, and/or local law in that these Defendants, without lawful basis, caused the aforementioned injuries and damages to Minor-Plaintiff by creating the danger to which Minor-Plaintiff was exposed, in violation of her aforesaid guaranteed rights, as set forth in the preceding paragraphs of this Complaint.

237.    The danger created by Defendants, DC, DCJDC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80,  and ABC Entities 1-10, as set forth above, was foreseeable and direct.

238.    Through its failures, acts and omissions as set forth above, Defendants, DC, DCJDC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80, and ABC Entities 1-10, created a degree of culpability that shocks the conscience.

239.    In creating the danger as set forth above, Defendants, DC, DCJDC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80,  and ABC Entities 1-10, acted in a willful disregard for the safety of Minor-Plaintiff and a reckless or callous indifference for her protected rights.

240.    As the facts set forth in this Complaint demonstrate, Defendants, DC, DCJDC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80, and ABC Entities 1-10, knew or should have known that DCJDC was abusing minors, including Minor-Plaintiff, and that by failing to take action to stop such abuses, Minor-Plaintiff was exposed to serious harm and established a deliberate indifference on their behalf towards her.

241.    Defendants', DC, DCJDC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80,  and ABC Entities 1-10, acts and omissions, as described in the preceding paragraphs of this Complaint, were the direct and proximate cause of Minor-Plaintiff's damages and injuries and are therefore liable to her under 42 U.S.C. § 1983.

**COUNT XI: 42 U.S.C. §1983**
**Plaintiffs v. DC, DCJDC, Meg Snead, Andrew Barnes, Jon Rubin, Teresa D. Miller,**
**Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80,  and ABC Entities 1-10**
**Deprivation of Rights by Virtue of a Special Relationship**

242.    Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

243.    As set forth herein, this is a civil rights action brought pursuant to 42 U.S.C. § 1983 that challenges the constitutionality of the actions by Defendants that resulted in severe injuries to Minor-Plaintiff.

244.    At all times relevant hereto, Defendants were all "persons" and were acting under "color of state law" pursuant to 42 U.S.C. §1983 by providing care, custody and/or control over Minor-Plaintiff either directly, by delegated authority or via contractual authority.

245.    The specific harms to which Defendants exposed Minor-Plaintiff were foreseeable and direct in that they knew that allowing continued child abuse within the DCJDC would result in severe and lasting harm to Minor-Plaintiff.

246.    At all times material hereto, Defendants were bound by various Pennsylvania statutes as well as, upon information and belief, its own policies, rules and regulations for the management of juveniles placed in their care.

247.    In direct contravention and in violation of those Pennsylvania statutes and upon information and belief, in violation of Defendants' own rules, regulations, and policies, Defendants recklessly and willfully subjected Minor-Plaintiff t to physical and psychological harms and death, described herein, even though such harms were foreseeable.

248.    At all times material hereto and upon information and belief, Defendants violated their own rules, regulations and policies for the management and supervision of individuals placed in their custody.

249.    At all times relevant hereto, a "special relationship" existed between Defendants and Minor-Plaintiff.

250.    Upon information and belief, a "special relationship" existed between Minor-Plaintiff and the aforesaid Defendants for purposes of 42 U.S.C. § 1983, as Minor-Plaintiff was placed in their care as a juvenile  and that care was custodial in nature, and resulted in the deprivation of Plaintiffs' safety and liberty.

251.    Defendants, while acting under color of state law, unlawfully, and/or intentionally, unreasonably, willfully, maliciously, and/or with deliberate and/or reckless indifference to the Minor-Plaintiff's rights, violated 42 U.S.C. § 1983 and deprived Minor-Plaintiff of her rights as guaranteed under the Fourth, Eighth, and/or Fourteenth Amendments to the United States Constitution, similar provisions of the Pennsylvania Constitution, Federal Law, State Law, and/or local law in that these Defendants without lawful basis caused the aforementioned injuries and damages to Minor-Plaintiff as described in this Civil Action Complaint, in violation of the aforesaid guaranteed rights as follows and upon information and belief:

      a.    failing to take reasonable and necessary steps to rescue Minor-Plaintiff after placing her in a position of harm;

      b.    failing to exercise reasonable and necessary steps to prevent harm despite knowing that Minor-Plaintiff was in danger;

      c.    failing to take reasonable and necessary steps to give aid  to Minor-Plaintiff or to intervene to prevent further harm;

      d.    Such other deliberately indifferent, reckless, and willful and wonton conduct resulting in the violation of Minor-Plaintiff's rights that shall be revealed through discovery prior to trial.

252.    Defendants' aforesaid conduct, initiated under color of state law, unlawfully, and/or intentionally, unreasonably, willfully, maliciously, and/or with deliberate and/or reckless indifference violated 42 U.S.C. § 1983 and deprived Minor-Plaintiff of her rights as guaranteed under the Fourth, Eighth, and/or Fourteenth Amendments to U.S. Constitution, similar provisions of the Pennsylvania Constitution, Federal Law, State Law, and/or local law without lawful basis,

thus causing injuries and damages to Minor-Plaintiff as aforesaid.

**COUNT XII: 42 U.S.C. §1983**
**Plaintiffs v. DC, DCJDC, and ABC Entities 1-10**
**Municipal Liability Claim**

253.    Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

254.    Defendants, DC, DCJDC, and ABC Entities 1-10, by and through is final policymakers, had in force and effect during the time of the abuse that occurred to Minor-Plaintiff and other children, and for many years preceding these abuses coming publicly to light, a policy, practice or custom of unconstitutional misconduct in the care, custody, supervision and/or control of minors that were placed in the Defendant's, Delaware County, juvenile detention center at Lima. Such unconstitutional misconduct includes the acts and abuses that are described in the preceding paragraphs of this Complaint.

255.    Defendants, DC, DCJDC, and ABC Entities 1-10, had actual or constructive notice of these policies, practices and customs, but repeatedly failed to make any meaningful investigation into the complaints that were raised about DCJDC and failed to take appropriate remedial and/or disciplinary actions to curb this pattern of misconduct.

256.    Such unconstitutional municipal customs, practices and/or policies were the moving force behind the abuse that occurred to S.B. and the injuries and damages she sustained as a result.

257.    Defendants, DC, DCJDC, and ABC Entities 1-10, also failed, with deliberate indifference, to provide a safe custodial setting for Minor-Plaintiff, by failing to properly train, supervise and discipline staff at the school, including the John Doe Defendants. As a direct and proximate result of Defendants' failure to train, supervise, monitor, discipline, oversee and control the staff at DCJDC, including the John Doe Defendants, Minor-Plaintiff was subjected to excessive and unreasonable force, a failure to protect from harm, and other abuses as set forth in this Complaint. Defendants, DC, DCJDC and its staff, and ABC Entities 1-10, violated Minor-Plaintiff's

Fourth, Eighth and Fourteenth Amendment rights when they physically, verbally, and psychologically abused her and took no action to prevent such abuse despite their knowledge and being on notice of what was occurring at DCJDC.

258.    Defendants', DC, DCJDC, and ABC Entities 1-10, acted in a willful disregard for the safety of Minor-Plaintiff and a reckless or callous indifference for her protected rights.

259.    Defendants', DC, DCJDC, and ABC Entities 1-10, acts and omissions, as described in the preceding paragraphs of this Complaint, were the direct and proximate cause of Minor-Plaintiff's damages and injuries and are therefore liable to her.

## PRAYER FOR RELIEF

**WHEREFORE,** in consideration of the above claims, Plaintiffs, C.B. and S.B., request that due to all Defendants' conduct as alleged herein, that Minor-Plaintiff be awarded damages including, but not limited to, the following:

    a.   All available compensatory damages for the described losses with respect to each cause of action;

    b.   Past and future medical expenses, as well as the costs associated with past and future life care;

    c.   Past and future lost wages and loss of earning capacity;

    d.   Past and future emotional distress;

    e.   Consequential and/or special damages;

    f.   All available non-economic damages, including without limitation pain, suffering, and loss of enjoyment of life;

    g.   Punitive damages with respect to each cause of action;

    h.   Reasonable and recoverable attorney's fees;

    i.   Costs of this action; and

    j.   Pre-judgement and all other interest recoverable.

## **<u>JURY TRIAL DEMANDED</u>**

Plaintiffs hereby demand a trial by jury.


Respectfully submitted,

**V'SCPLAW** VAN NAARDEN · SPIZER
CHASE · PINTO

_____
GREGORY S. SPIZER, ESQUIRE
JULIA RONNEBAUM, ESQUIRE
2001 Market Street, Suite 3700
Philadelphia, PA 19103
TEL:  215-960-0000
FAX:  215-960-0384


Date: September 27, 2021                    *Attorneys for Plaintiff*

48

## **<u>CERTIFICATE OF SERVICE</u>**

I, Gregory S. Spizer,  Esquire, Attorney for Plaintiffs, hereby certify that a true and correct copy of

Plaintiffs Amended Complaint  has been electronically served by the Court upon all Counsel of record.

**VSCP**LAW  VAN NAARDEN · SPIZER
CHASE · PINTO

By: _____

GREGORY S. SPIZER, ESQ.

*Attorney for Plaintiffs*

Dated: September 27, 2021